**EYERLY AIRCRAFT CO., Appellant,**

v.

**Jack KILLIAN, Individually and for and on behalf of Jan Killian, a Minor, Appellee.**

**No. 26275.**

United States Court of Appeals
Fifth Circuit.

July 11, 1969.

Rehearing Denied Aug. 5, 1969.

George C. Chapman, Thompson, Knight, Simmons & Bullion, Dallas, Tex., for appellant.

Henry Stollenwerck, Dallas, Tex., for appellee.

Before GOLDBERG and MORGAN, Circuit Judges, and LIEB, District Judge.

GOLDBERG, Circuit Judge.

Our question in this diversity case is whether the Texas "Long Arm" statute has the stretch, within constitutional permissibility, to embrace the products liability action before us.[1] We find both the stretch and the embrace.

Jan Killian was seriously injured in a fall from an amusement ride in Dallas, Texas. Seeking to recover damages on account of Jan's injury, Jack Killian, individually and on behalf of Jan (his minor daughter), filed suit against Eyerly Aircraft Company, the manufacturer of the ride which is known as a Rock-O-Plane,[2] and against Jack Eyerly, the company's president. Service upon Eyerly Aircraft Company which is an Oregon corporation, and upon Jack Eyerly individually was accomplished through the Texas "Long Arm" statute. Tex.Rev.Civ.Stat. art. 2031b (1964).[3] Eyerly Aircraft and Jack Eyerly filed motions to dismiss and quash service.

1. See generally 1 Barron and Holtzoff, Federal Practice and Procedure (Wright rev. 1960) § 179; 2 Moore's Federal Practice (1967) § 4.25; Thode, In Personam Jurisdiction; Article 2031b, the Texas "Long Arm" Statute; and the Appearance to Challenge Jurisdiction in Texas and Elsewhere, 42 Texas L.Rev. 279 (1964); Jurisdiction Over Foreign Corporations Under Article 2031b, 39 Texas L.Rev. 214 (1960); Note, 14 Sw. L.J. 265 (1960).

2. The Rock-O-Plane and other amusement devices manufactured by Eyerly Aircraft were described by Eyerly as follows:

"All successful amusement riding devices basically include passenger participation and/or sensation. Our amusement riding devices utilize both with, for instance, the Fly-O-Plane and Rock-O-Plane leaning towards participation with good sensation and the Octopus models, including the Monster, the Loop-O-Plane, and Roll-O-Plane all depending mainly on sensation. In this day and age, any promotional material relating to park or carnival operation would hesitate to utilize adjectives as tame as thrill rides to describe any amusement riding device. However, we recognize that even the most controlled and safe device contributing to a pleasing sensation would be more commonly termed a thrill. To properly reply to this inquiry, we must state that in our opinion, there is no successful amusement riding device that does not contribute to sensation—or thrill."

3. The Texas "Long Arm" statute provides in relevant part:

"Art. 2031b. Service of process upon foreign corporations and nonresidents

Failure to appoint agent; designation of Secretary of State as lawful attorney

Section 1. When any foreign corporation, association, joint stock company, partnership, or nonresident natural person required by any Statute of this State to designate or maintain a resident agent, or any such corporation, association, joint stock company, partnership, or non-resident natural person subject to Section 3 of this Act, has not appointed or maintained a designated agent, upon whom service of process can be made, or has one or more resident agents and two (2) unsuccessful attempts have been made on different business days to serve process upon each of its designated agents, such corporation, association, joint stock company, partnership, or non-resident natural person shall be conclusively presumed to have designated the Secretary of State of Texas as their true and lawful attorney upon whom service of process or complaint may be made.

Engaging in business in state; service upon person in charge of business

Sec. 2. When any foreign corporation, association, joint stock company, partnership, or non-resident natural person, though not required by any Statute of this State to designate or maintain an agent, shall engage in business in this State, in any action in which such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party arising out of such business, service may be made by serving a copy of the process with the person who, at the time of the service, is in charge of any business in which the defendant or defendants are engaged in this State, pro-

The motion was overruled as to the company and sustained as to Jack Eyerly. Eyerly Aircraft now appeals from that interlocutory order of the trial court under the aegis of 28 U.S.C.A. 1292(b) (1966), contending that its contacts with Texas were insufficient to support in personam jurisdiction. The substantive issues before us, therefore, are: (1) whether Eyerly Aircraft had sufficient contacts with the State of Texas to support in personam jurisdiction against a constitutional attack, i.e., whether the corporation had the "minimum contacts" with Texas necessary in order for the maintenance of the suit not to offend due process; and (2) whether, assuming that the assertion of jurisdiction is constitutionally permissible, the Texas "Long Arm" statute was intended to reach as far as the controversy at bar.

The Rock-O-Plane in question was manufactured by Eyerly Aircraft in Oregon approximately twenty years ago, and from there this ride indirectly peregrinated to Texas through interstate commerce. In 1949 the Rock-O-Plane was sold and shipped to an amusement company in Chicago. Then in 1964 that company sold the ride to William D. Stanley Shows, Inc., in Fargo, North Dakota. During the years intervening between that sale and the injury to Jan Killian in Dallas, this ride toured numerous states with Stanley Shows.

Although there is nothing in the record to indicate that Eyerly Aircraft ever saw the ride after it was shipped to Chicago, the record does clearly reflect that Eyerly Aircraft contemplated that the ride would ambulate from state to state throughout the nation and that it would eventually tour Texas.[4] More-

---

vided a copy of such process, together with notice of such service upon such person in charge of such business shall forthwith be sent to the defendant or to the defendants principal place of business by registered mail, return receipt requested.

Act of engaging in business in state as equivalent to appointment of Secretary of State as agent

Sec. 3. Any foreign corporation, association, joint stock company, partnership, or non-resident natural person that engages in business in this State, irrespective of any Statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such foreign corporation, joint stock company, association, partnership, or non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceeding arising out of any such business done in this State, wherein such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party.

Doing business in state; definition

Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or *the committing of any tort in whole or in part in this State.*

Delivery of process to Secretary of State; forwarding copy

Sec. 5. Whenever process against a foreign corporation, joint stock company, association, partnership, or non-resident natural person is made by delivering to the Secretary of State duplicate copies of such process, the Secretary of State shall require a statement of the name and address of the home or home office of the non-resident. Upon receipt of such process, the Secretary of State shall forthwith forward to the defendant a copy of the process by registered mail, return receipt requested.

\* \* \* "

[Emphasis added.]

4. In the record we find the following answers to interrogatories propounded to Eyerly Aircraft:

"19. *Our business is design, manufacture, and sale of amusement riding devices,* and it does not include leasing

over, Eyerly Aircraft through other transactions had made numerous and repeated contacts with Texas and has purposefully availed itself of the protections of her laws. Included in this enumeration of contacts with Texas are the following: (1) sales and deliveries of amusement devices and parts directly into the state; (2) the extension of credit in the state; (3) the retention of liens on items sold; (4) the filing of such liens with state and county authorities; (5) the servicing of machines in the state; and (6) the solicitation of business in the state.[5] These contacts with Texas were neither occasional nor

or operation of same. *We would assume that various carnival operators must operate over a large area* since contacts for parts we sell as time sales payments for devices are received from areas different than the addresses as furnished for security filing basis. The amusement business publication also publishes a weekly list of moving carnival addresses.

"20. We would be unable to qualify frequency, but we have furnished parts to Texas addresses to operators listing other states as a home base.

"21. We have furnished parts to carnival operations specifying shopping center addresses. We have also observed this type of operation in our own state.

"22. *We must assume some interstate movement of devices.* * * *

\* \* \* \* \*

"28. *Our firm is engaged in the business of design, manufacture, and sale of amusement riding devices to the outdoor amusement industry of the world.*

"Relatively small business has produced approximately fifteen hundred devices during the past thirty-eight years. We are well known in the trade and all sales are handled direct from the factory and sales office at Salem, Oregon. Small weekly ads (nonchanging in the past eight to ten years) are carried in amusement business publications and also yearbook complimentary ads are placed with various carnival and park associations. Descriptive matter and price sheets are mailed from the office on phoned or written requests. An annual trade show is held in conjunction with the Carnival, Park, and Fair Association Convention at Hotel Sherman, Chicago, Illinois, the last week in November of each year. Descriptive matter and price sheets are made available for passing out at that time and any orders which are placed are subject to acceptance at the Salem, Oregon office." [Emphasis added.]

5. During the period June 1, 1962, through May 31, 1967, Eyerly Aircraft sold its machines to Texas companies five times

and shipped scores of parts into the state. An operator of amusement rides at the Fair Grounds in Dallas, Texas, affirmed by affidavit that some of his many rides permanently located at the Fair Grounds were manufactured by Eyerly Aircraft. He further stated:

"When I purchased the rides from Eyerly Aircraft Co. some of them were delivered to me by Eyerly Aircraft Co. on trucks of Eyerly Aircraft Co. and the Eyerly Aircraft Co. then helped to assemble these rides. Others of the rides were shipped to me by box cars. I know that Eyerly Aircraft Co. has trucks which operate on highways in Texas and that they help to assemble rides in Texas.

"I am personally acquainted with the fact that all of the permanently located amusement parks in Texas have located in them rides made by Eyerly Aircraft Co. and among these amusement parks are

Forest Park in Fort Worth, Texas
Playland Park in San Antonio, Texas
Fair Park in Dallas, Texas.
*There are many travelling amusement shows which travel in and out of Texas, some are based in Texas,* such as
Dick Haines Show, Fort Worth, Texas,
Gene Ledel Show, Fort Worth, Texas,
W. A. Shaefer Shows, Dallas, Texas,
*and all of these shows have and use and offer for riding amusement Eyerly Aircraft Co. rides.*

"Mr. Jack Eyerly comes to my park at the Fair Grounds in Dallas, Texas about once a year and looks at my rides so that he can tell what they are worth so that he can give me a trade-in allowance when I buy new rides from him which I do from time to time.

"I regularly get and read the magazine called "Amusement Business" and I have many times seen that Eyerly Aircraft Co. advertises for sales of its equipment in that magazine.

"There are many travelling amusement shows and almost all of them have some Eyerly Aircraft Co. rides and almost all of them travel in and go in and out of Texas and set up and operate Eyerly Aircraft Co. rides." [Emphasis added.]

sporadic—they were both continuous and substantial.

## I.

Our first concern is whether the assertion of Texas "Long Arm" jurisdiction in this diversity case was consistent with due process. The scope of permissible state jurisdiction over the person of foreign corporations has broadened considerably in the last twenty-five years, but the power of states and federal courts sitting in diversity cases over foreign corporations still has constitutional limits. Hanson v. Denckla, 1958, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L. Ed.2d 1283, 1296. The legal evolution of subjecting foreign corporations to forum process reflects a rejection of the primeval requirement of forum corporeality expressed in Pennoyer v. Neff, 1878, 95 U.S. 714, 24 L.Ed. 565, and an adoption of the principle that a foreign corporation is subject to forum tentacles whenever the corporation has such "minimum contacts" with the forum state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 1945, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102; McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 222, 78 S. Ct. 199, 2 L.Ed.2d 223, 225–226. What "is essential in each case [is] that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus involving the benefits and protections of its laws." Hanson v. Denckla, supra, 235 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298. See Annot., 2 L.Ed.2d 223 (1958); Annot., 19 A.L. R.3d 13 (1968).

■ Here the defendant corporation has purposefully conducted business activities in Texas, but the plaintiff's cause of action, which sounds in tort, did not arise out of those contacts. Eyerly Aircraft not only actively solicited business in Texas, but it also sold and serviced its products in the state. If the plaintiff's cause of action arose out of these contacts, e.g. if the child's injury had resulted from a defect in a ride shipped directly into Texas by Eyerly Aircraft, due process would unquestionably be satisfied. Hardy v. ReKab, Inc., D.Md. 1967, 266 F.Supp. 508; Farmer v. Ferris, N.C. 1963, 260 N.C. 619, 133 S. E.2d 492; see International Shoe Corp. v. Washington, supra. The plaintiff's cause of action, however, arises out of an alleged defect in a Rock-O-Plane which the defendant corporation had neither sold nor serviced in Texas. Eyerly Aircraft manufactured the ride in Oregon and has had no contact with the ride since introducing it into interstate commerce by selling it to a Chicago amusement show some twenty years ago. The question in this case, therefore, is whether the unrelated business contacts plus the introduction of the ride into interstate commerce are sufficient to support Texas in personam jurisdiction over Eyerly Aircraft. We hold that these contacts are sufficient.

Where a foreign corporation does substantial business within a state, that state may assert in personam jurisdiction over the corporation to enforce a cause of action arising out of a tort committed in part within its boundaries. Smyth v. Twin State Improvement Corp., Vt. 1951, 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193. Thus where a corporation with substantial contacts within state X ships into that state a product which it has manufactured in state Y and an injury occurs in state X because of an alleged defect in the product, the corporation may constitutionally be called upon to defend a products liability suit brought in state X where the injury occurred. Deveny v. Rheem Mfg. Co., 2 Cir. 1963, 319 F.2d 124; Shealy v. Challenger Mfg. Co., 4 Cir. 1962, 304 F.2d 102; cf. Carter v. American Bus Lines, Inc., D.Neb. 1959, 169 F.Supp. 460. This result also obtains where the manufacturer has elected to distribute his wares through independent wholesalers instead of through its own corporate apparatus so that it is only very indirectly responsible for the

product reaching the injured consumer. Florio v. Powder Power Tool Corp., 3 Cir.1957, 248 F.2d 367; Etzler v. Dille and McGuire Mfg. Co., W.D. Va. 1965, 249 F.Supp. 1. The present trend is to take the next logical step and hold that a corporation is answerable where it introduces its product into the stream of interstate commerce if it had reason to know or expect that its product would be brought into the state where the injury occurred:

> "Where a defendant does business of such a volume, or with such a pattern of product distribution, that he should reasonably anticipate that his product may be ultimately used in any state, he has done the act required for the exercise of jurisdiction by the state where the injured user resides.

> \* \* \* \* \* \*

> "When a manufacturer voluntarily chooses to sell his product in a way in which it will be resold from dealer to dealer, transferred from hand to hand and transported from state to state, he cannot reasonably claim that he is surprised at being held to answer in *any* state for the damage the product causes. Nor can he deny the substantial interest of the injured person's state in providing a convenient forum for its citizens." Keckler v. Brookwood Country Club, N.D. Ill.1965, 248 F.Supp. 645, 648–649.

See also Harford v. Smith, N.D.W.Va. 1966, 257 F.Supp. 578; Jackson v. National Linen Service Corp., W.D.Va.1965, 248 F.Supp. 962; Anderson v. Penncraft Tool Co., N.D.Ill. 1961, 200 F.Supp. 145; contra O'Brien v. Comstock Foods, Inc., 1963, 123 Vt. 461, 194 A.2d 568; see Yules v. General Motors Corp., D.Mont. 297 F.Supp. 674.

The primogenial case for subjecting a non-resident corporation to forum process where the corporation has shipped its product into the forum state indirectly through the stream of interstate commerce is Gray v. American Radiator & Standard Sanitary Corp., 1961, 22 Ill.2d 432, 176 N.E.2d 761. In Gray the plaintiff was injured in Illinois when a water heater exploded because of a defective valve. Service of process was sustained against the defendant foreign corporation which manufactured the valve even though the corporation's only contact with Illinois was very indirect. The defendant corporation manufactured the defective valve in Ohio and, subsequently, that valve was incorporated into a hot water heater in Pennsylvania. That heater was then sold in the course of commerce through which it eventually reached Illinois. On these facts the Supreme Court of Illinois found that the defendant corporation had sufficient contacts with Illinois to support in personam jurisdiction without due process being offended:

> "In the case at bar defendant does not claim that the present use of its product in Illinois is an isolated instance. While the record does not disclose the volume of Titan's business or the territory in which appliances incorporating its valves are marketed, it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and consumption in this State. To the extent that its business may be directly affected by transactions occurring here it enjoys benefits from the laws of this State \* \* \* and from the protection which our law has given to the marketing of hot water heaters containing its valves. Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State.

> With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential to the conduct of

his business; and it is not unreasonable, where a cause of action arises from alleged defects in his product to say that use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here." [6] 176 N.E.2d at 766.

In the case *sub judice* Eyerly Aircraft had far more substantial contacts with the state where its product allegedly caused injury than did the defendant corporation in *Gray*. Here Eyerly through the years had activated continuous and substantial business relations directly with Texas concerns, whereas in *Gray* there was no evidence that the defendant corporation had any contacts with Illinois other than the indirect shipment of the single valve through interstate commerce into the state. Moreover, Eyerly did not intend for its products to be sedentary and it had reason to know that its rides would not come to a permanent rest at the domicile of its original purchaser. The carnivals which purchase Eyerly's rides frequently do not have fixed loci and are often fun and thrill dispensing nomads which itinerate from place to place. Given the multistate kinetics of its products and its engagement in world-wide trade, we assert, without chauvinistic overtones, that Eyerly Aircraft should expect that the stream of interstate commerce would bring its products to Texas. We therefore hold that Eyerly Aircraft's contacts with Texas were substantial enough to constitutionally support Texas' assertion of "Long Arm" in personam jurisdiction over it.

By basing our holding on the dual grounds that Eyerly Aircraft had substantial contacts in Texas apart from the alleged commission of a tort within the state and that it introduced this Rock-O-Plane into interstate commerce with reason to know that the ride would probably eventually nomadize through the state, we do not mean to imply that the commission of a single tort without further contacts in the state would not be sufficient to satisfy due process. Where a nonresident corporation engages in a single isolated transaction in a state and a tort claim arises out of that activity, the state may assert jurisdiction over the non-resident corporation without contravening due process. Elkhart Engineering Corp. v. Dornier Werke, 5 Cir. 1965, 343 F.2d 861; Dtzler v. Dille and McGuire Mfg. Co., W.D. Va. 1965, 249 F.Supp. 1; see Hutchinson v. Boyd and Sons Press Sales, Inc., D. Minn. 1960, 188 F.Supp. 876. This position was given a measure of Supreme Court support in Justice Goldberg's opinion in chambers in Ro-

---

6. In elucidation of its interpretation of the *International Shoe-McGee* philosophy regarding the expansion of "Long Arm" jurisdiction, the court in *Gray* went on to say:

"As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products. Advanced means of distribution and other commercial activity have made possible these modern methods of doing business, and have largely effaced the economic significance of State lines. By the same token, today's facilities for transportation and communication have removed much of the difficulty and inconvenience formerly encountered in defending lawsuits brought in other States.

"Unless they are applied in recognition of the changes brought about by technological and economic progress, jurisdictional concepts which may have been reasonable enough in a simpler economy lose their relation to reality, and injustice rather than justice is promoted. Our unchanging principles of justice, whether procedural or substantive in nature, should be scrupulously observed by the courts. But the rules of law which grow and develop within those principles must do so in the light of the facts of economic life as it is lived today. Otherwise the need for adaptation may become so great that basic rights are sacrificed in the name of reform, and the principles themselves become impaired." We are in complete agreement with this jurisprudential philosophy.

senblatt v. American Cyanamid Co., 1965, 86 S.Ct. 1, 15 L.Ed.2d 39, 43:

"The logic of this Court's decisions in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95, [161 A.L.R. 1057] and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, supports the validity of state 'long arm' statutes such as the one involved here which base in personam jurisdiction upon commission of a 'tortious act' in the forum State. Since those decisions a large number of States have enacted statutes similar to the one here. In cases under these statutes in state and federal courts, jurisdiction on the basis of a single tort has been uniformly upheld.

"Indeed, the constitutionality of this assertion of jurisdiction today, could only be doubted by those determined to oppose the clear trend of the decisions. This situation is exactly that of the nonresident-motorist statutes, which were long ago upheld, except that the highways are not directly involved. It is now clear, if it was ever in doubt, that the nonresident-motorist cases were not really based on 'consent' but on the interest of the forum State and the fairness of trial there to the defendant." Currie, The Growth of the Long Arm, 1963 U. Ill. Law Forum 515,540."

Although we recognize that there is strong authority for the single tort theory, we need not and do not decide how far this principle will extend and whether it would encompass the case *sub judice*.[7]

## II.

Having determined that Eyerly Aircraft had sufficient contacts with Texas to satisfy due process, we must now take the specific measurements of the Texas "Long Arm" statute to see if its arm reaches as far as the Constitution permits in this case.[8] We have little difficulty in finding the statutory reach even though the *Erie* directives from the Texas courts[9] are lacking in delineation and

7. We do, however, note that a light grey line has been drawn where a non-resident corporation is sued in one state for a tort committed in a third state. Suppose a situation where a corporation, whose residence is in state X, commits a tort in state Y and is sued for that tort in state Z. Unless the corporation had substantial contacts with state Z, the courts in state Z could not assert jurisdiction over the person of the foreign corporation. Turner v. Jack Tar Grand Bahama, Ltd., 5 Cir. 1965, 353 F.2d 954; Lindley v. St. Louis-San Francisco Ry. Co., 7 Cir. 1968, 407 F.2d 639; Blount v. Peerless Chemicals (P.R.), Inc., 2 Cir. 1963, 316 F.2d 695, cert. denied, Colbert v. Peerless Chemicals Inc., 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62; cf, Pliler v. Asiatic Petroleum Co., S.D.Tex.1961, 197 F.Supp. 212. Where, however, the nonresident corporation's contacts with state Z are found to be substantial, the "long arm" assertion of jurisdiction has been upheld. Hoffman v. Air India, 5 Cir. 1968, 393 F.2d 507, cert. denied 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260, see Hutter Northern Trust v. Door County Chamber of Commerce, 7 Cir. 1968, 403 F.2d 481. This distinction is supported by the following language in Perkins v. Benguet Consolidated Mining Co., 1952, 342 U.S. 437, 446, 72 S.Ct. 413, 418, 96 L.Ed. 485, 493:

"The instant case takes us one step further to a proceeding in personam to enforce a cause of action not arising out of the corporation's activities in the state of the forum. Using the tests mentioned above we find no requirement of federal due process that either *prohibits* Ohio from opening its courts to the cause of action here presented or *compels* Ohio to do so. This conforms to the realistic reasoning in International Shoe Co. v. Washington, supra 326 U.S. at pages 318, 319, 66 S.Ct. at pages 159–160, [90 L.Ed. 95, 103, 104, 161 A.L.R. 1057.]

" * * * there have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings distinct from those activities. [Cases cited].'"

8. See Thode, *op. cit.* n. 1, Tex.L.Rev. at 303–10.

9. When construing a state "Long Arm" statute, a federal court in a diversity

incandescence.[10]   The federal courts in diversity cases, however, have on several occasions engaged in rational divination on this question and have always held that article 2031b should be given as broad a reach as due process will permit any "Long Arm" statute to be given.[11] In Atwood Hatcheries v. Heisdorf & Nelson Farms, 5 Cir. 1966, 357 F.2d 847, 852, this Court per Chief Judge Brown wrote: "we now declare what was more hesitatingly suggested in Lone Star and even more guardedly assumed in Jack Tar that 'the Texas purpose [in enacting article 2031b] was to exploit to the maximum the fullest permissible reach under federal constitutional restraints.'" See also Turner v. Jack Tar Grand Bahama, Ltd., 5 Cir. 965, 353 F.2d 954, 956; Lone Star Motor Import, Inc. v. Citroen Cars Corp., 5 Cir. 1961, 288 F. 2d 69, 73; Barnes v. Irving Trust Co., S.D.Tex.1968, 290 F.Supp. 116, 117; Amco Transworld, Inc. v. M/V Bambi, S.D.Tex.1966, 257 F.Supp. 215, 216–217; cf. Trinity Steel Co., Inc. v. Modern Gas Sales & Service Co., Tex.Civ.App. 1965, 392 S.W.2d 861 (writ ref'd n. r. e.). There is no indication that this long arm has withered since these decisions.[12]

case is required under the doctrine of Erie R. R. Co. v. Tompkins, 1933, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, to give the statute the same construction as would the highest court of that state. Walker v. Savell, 5 Cir. 1964, 335 F.2d 536, 540.

10. The reason for the lack of explicatory decisions is that until the fortunate demise of the effect of York v. Texas, 1890, 137 U.S. 15, 34 L.Ed. 604 through the promulgation of Tex.R.Civ.P. 120a (the special appearance rule), the Texas courts had little opportunity "to construe article 2031b or to pass upon its constitutionality." Thode, op. cit. n. 1. 42 Tex.L.Rev. at 306. Because of York, "either the defendant appeared generally or he stayed out of the state and allowed the default judgment to be taken (assuming the trial court determined that in personam jurisdiction had been obtained). In either situation, article 2031b did not get into issue in a Texas state court." Id. Professor Thode suggested that the adoption of Tex. R.Civ.P. 120, which provides for a special appearance to challenge the court's jurisdiction over the person or property of a defendant, would change this situation. History, however, has not supported this prophecy. Although the state trial courts in Texas have on myriad occasions construed article 2031b, there are few reported appellate decisions since there is no appeal from the overruling of a motion to quash service for want of jurisdiction. Carpenter Body Works, Inc. v. McCulley, Tex.Civ.App.1965, 389 S.W.2d 331 (writ ref'd), cert. denied 382 U.S. 979, 86 S.Ct. 550, 15 L.Ed.2d 469.

11. This result is consistent with the construction given to the "Long Arm" statutes of other states. See, e. g., Wilen Mfg. Co. v. Standard Products Co., 5 Cir. 1969, 409 F.2d 56, [Feb. 21, 1969] ("the Georgia statute was 'designed to take advantage of the liberalized concepts governing the exercise of personal jurisdiction over nonresidents.'"); Hutter Northern Trust v. Door County Chamber of Commerce, 7 Cir. 1968, 403 F.2d 481, 485 ("the legislative intent of the Illinois long-arm statute is to assert jurisdiction over nonresidents to the extent permitted by the due process clause.").

12. Eyerly Aircraft argues that these decisions were undermined by the Texas Supreme Court's decision in O'Brien v. Lanpar Co., Tex.1966, 399 S.W.2d 340. Eyerly points out that the Texas court quoted with approval from a decision of the Supreme Court of Washington, Tyee Construction Co. v. Dulien Steel Products, Inc., 1963, 62 Wash.2d 106, 381 P.2d 245, 251, in which it was stated that jurisdiction over a foreign corporation could be entertained where the corporation had purposefully acted in the forum state and where the cause of action being asserted arose from such act. The suggested implication of this decision is that where, as in the case sub judice, the cause of action arose from a tort separate and apart from the corporation's other business activities in the state, Art. 2031b is inapplicable even though the contacts are sufficient to satisfy due process. We disagree with this reading of O'Brien. This Texas decision has at least three material distinguishments from the case at bar. First, the Texas Supreme Court was concerned with the Illinois "Long Arm" statute and not with Art. 2031b. The Texas court made this very clear when it said: "It should be remembered, however, that it is the Illinois law and not the Texas law that is in point." 399 S.W.2d at 343. Second, when the Texas court referred to the Washington decision, it was discussing the due process limits on "Long Arm"

Moreover, we find that article 2031b specifically reaches foreign corporations alleged to have committed "any tort in whole or in part in this State." Eyerly Aircraft clearly comes within this broad encompassing language. In construing a "Long Arm" statute containing a similar provision referring to a tort committed in whole or in part in the state, the court in Williams v. Vick Chemical Co., S.D. Iowa, 279 F.Supp. 833, 836, wrote:

"The Iowa law is clear that the manufacturer of a product which causes injury in Iowa has committed a tort in part in Iowa and that such contact is an act of doing business sufficient to confer the courts with jurisdiction over the defendant. * * *"

See also Beetler v. Zotos, 7 Cir. 1967, 388 F.2d 243; Jack O'Donnell Chevrolet, Inc. v. Shankles, N.D. Ill. 1967, 276 F. Supp. 998; McMahon v. Boeing Airplane Co., N.D. Ill. 1961, 199 F.Supp. 908; Beck v. Spindler, 1959, 256 Minn. 543, 99 N.W.2d 670, 681; cf. Putman v. Erie City Mfg. Co., 5 Cir. 1964, 338 F. 2d 911; Franklin Serum Co. v. C. A.

Hoover & Son, Tex. 1967, 418 S.W.2d 482.

We need not, however, rely solely on these general propositions. A Minnesota "Long Arm" statute, which is in all relevant aspects identical to the Texas statute,[13] has been construed to apply in a products liability case where the defendant foreign corporation had less direct and substantial contacts with the forum state than did Eyerly Aircraft in this case. Ehlers v. United States Heating and Cooling Mfg. Corp., 1963, 267 Minn. 56, 124 N.W.2d 824. In the *Ehlers* case the plaintiff's building in Minnesota was destroyed by a fire allegedly caused by a defective boiler manufactured by the defendant foreign corporation. The boiler was manufactured in Ohio by the defendant corporation and was sold to a New York corporation. Subsequently, the boiler was sold and delivered by the New York company to an Illinois corporation, which in turn sold it to the Minnesota corporation which installed it in the plaintiff's building. The manufacturer had no contact with the boiler after it

service of process and it was not speaking of any statutory limits. The third distinction goes to an important difference between the facts of this case and the situation described in the language of the Washington opinion. The requirement there imposed was that the cause of action being asserted must arise out of the foreign corporation's contacts with the state. The Washington court's implicit reference was to the situation discussed in footnote 7, *supra*,—the instance where a corporation, whose residence is in state X, is sued in state Y on a cause of action arising out of a tort committed in state Z. In contrast, the case *sub judice* concerns a corporation, whose residence is in state X, being sued in state Y for a tort committed in part in state Y. For this reason the Washington court's language has no constitutional or statutory relevance to the case at bar. A *fortiori* the Texas decision in *O'Brien*, which is distinguishable on two other grounds, has no relevance here.

13. Minn.Stat.Ann. § 303.13, subd. 1(3) (1969 supp.) provides:

"(3) If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation *commits a tort in whole or in part in Minnesota* against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contracts or tort. Such process shall be served in duplicate upon the secretary of state, together with a fee of $6 and the secretary of state shall mail one copy thereof to the corporation at its last known address, and the corporation shall have 20 days within which to answer from the date of such mailing, notwithstanding any other provision of the law. The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally within the State of Minnesota [Emphasis added].

left the Ohio factory and had no separate dealings within the State of Minnesota. Upon these facts the Supreme Court of Minnesota found that the non-resident corporation had committed a tort "in whole or in part in Minnesota", and that the "Long Arm" statute was therefore applicable. The court wrote:

> "The issue for decision is whether the property damage here involved— if the result of negligent manufacture of the boiler—can, under the circumstances described, be considered a tort committed 'in whole or in part in Minnesota' so as to give jurisdiction over the manufacturer, upon compliance with § 303.13 subd. 1(3), without offense to its Federal constitutional rights.

> We have previously held that the negligent manufacture of a product in a foreign state becomes a tort committed 'in whole or in part in Minnesota' when personal injury occurs in Minnesota as a result of use of the product here. [Cases cited]." 124 N.W.2d at 826.[14]

On the basis of a literal reading of the statutory language and the relevant case authority, we have concluded that the Texas courts would hold that article 2031b encompasses the case *sub judice*. Accord, Hearne v. Dow-Badische Chemical Co., S.D. Tex. 1963, 224 F.Supp. 90; Hull v. Gamblin, D.C.Ct. App. 1967, 241 A.2d 739. We therefore hold that Eyerly Aircraft was subject to Texas "Long Arm" service of process.

### III.

Our final concern is Eyerly Aircraft's argument that the plaintiff's pleadings were insufficient to invoke the long arm of article 2031b. The appellant contends that the Supreme Court of Texas in McKanna v. Edgar, Tex. 1965, 388 S.W. 2d 927, held that as a jurisdictional condition precedent to the application of article 2031b (3), the plaintiff must affirmatively *plead* that the defendant corporation does not maintain in Texas either (1) a regular place of business, or (2) a designated agent for service. McKanna v. Edgar clearly construed Article 2031b to require some affirmative

14. In this holding the Minnesota court cited its previous decision in Atkins v. Jones & Laughlin Steel Corp., 1960, 258 Minn. 571, 104 N.W.2d 888, wherein we find the following pertinent language:

> "Defendant contends * * * that under § 303.13, subd. 1(3), before a foreign corporation can be deemed to be doing business here by virtue of the commission of a tort, its tortious conduct must have occurred within the state. It asserts that in tort actions the validity of statutes of this kind has been upheld only where the tortious conduct complained of was committed wholly within the state of the forum; and directs attention to a number of decisions in which jurisdiction was denied where such conduct occurred entirely outside the forum, even though the damage or injury which resulted therefrom occurred within the court's jurisdiction.

> It is well settled that a manufacturer, regardless of privity of contract, is liable to an ultimate user of his product or to others who may reasonably be expected to be in the vicinity of its probable use for injuries arising from his negligence in the manufacture or containment of the product. Assuming that here defendant's conduct in containing the hydrofluosilicic acid was negligent, the question remains whether such negligence constituted the commission of a tort in whole or in part within Minnesota so as to give jurisdiction to our courts under § 303.13, subd. 1(3).

> * * * * *

> While recognizing the merit of protecting rights of foreign corporations not doing business here, we feel that such considerations are outweighed by the general objective of our single-act statute, that is to permit a Minnesota citizen injured here by the wrongful act of a foreign corporation to seek recompense therefor in our courts. Beck v. Spindler, supra. Based upon such considerations and the well-established principle that the place of the wrong is the place where the legal injury occurs, we conclude that if the allegations of the complaint are established it would follow that defendant has committed a tort within the state, and hence under § 303.13, subd. 1(3), may be said to have been doing business here so as to be subject to our jurisdiction thereunder." 104 N.W.2d at 892, 894.

showing that these two conditions have been satisfied before "Long Arm" process via the Secretary of State may be used. Thus the Texas "Long Arm" statute under whose shelter the plaintiff wants to come is applicable only where these two short-arm methods of serving process are alleged or otherwise shown to be unavailable to him.[15] McKanna v. Edgar may have required even more—it *may* have further held that the face of the pleadings must contain the allegations that the defendant corporation "does not maintain a place of regular business in this State or a designated agent upon whom service may be made." 388 S.W.2d at 929. See Curry v. Dell Publishing Company, Tex.Civ.App.1969, 438 S.W.2d 887, 890; Firence Footwear Co. v. Campbell, Tex.Civ.App. 1967, 411 S.W.2d 636 (writ ref'd n.r.e.)

The record in the case at bar reflects that the plaintiff's complaint contains allegations that service of process was made "under V.A.T.S. 2031b upon the Secretary of State of the State of Texas and by serving JACK EYERLY, Individually, and on behalf of EYERLY AIRCRAFT CO., c/o Eyerly Aircraft Co., * * *", but the complaint does not allege Eyerly had no registered agent or regular place of business in Texas. Other parts of the record, however, do show affirmatively that "EYERLY AIRCRAFT CO. never has appointed or authorized any agent to accept service of process for it in any action commenced in the State of Texas", and that "Eyerly Aircraft Co. does not within the State of Texas maintain any stock of goods or merchandise or have any warehouses, have any bank accounts, own or lease any property, real or personal, or any buildings, equipment or machinery."

Bypassing for the moment the McKanna v. Edgar problem, the allegations in the plaintiff's complaint are clearly sufficient under the standards set forth in Fed. R. Civ. P. 8. In Conley v. Gibson, 1957, 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed. 80, 85–86, the Supreme Court gave us positive instructions to give a liberal construction to pleadings when passing upon their sufficiency under Fed. R. Civ. P. 8:

"[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Following the simple guide of Rule 8(f) that 'all pleadings shall be so construed as to do substantial justice,' we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose

15. These short-arm methods of service are set forth in Section 2 of Article 2031b:
"When any foreign corporation, association, joint stock company, partnership, or non-resident natural person, though not required by any Statute of this State to designate or maintain an agent, shall engage in business in this State, in any action in which such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party arising out of such business, service may be made by serving a copy of the process with the person who, at the time of the service, is in charge of any business in which the defendant or defendants are engaged in this State, provided a copy of such process, together with notice of such service upon such person in charge of such business shall forthwith be sent to the defendant or to the defendants principal place of business by registered mail, return receipt requested."

of pleading is to facilitate a proper decision on the merits. [Case cited]."

We now return to McKanna v. Edgar and the question whether that decision requires us to deviate from the Federal Rules and hold that plaintiff Killian's complaint was fatally incomplete. Assuming that McKanna v. Edgar did hold that the face of the plaintiff's pleadings must contain allegations regarding the absence of either a registered agent for process or a regular place of business in the state and that it is not enough that the necessary information appear without contradiction elsewhere in the record, the issue before us is the extent to which Erie binds us to the law as announced in that Texas decision. The answer is that *Erie* compels us to hold that a necessary prerequisite to the applicability of section 3 of article 2031b is that the record affirmatively show that the corporation being sued "does not maintain a place of regular business in this State or a designated agent upon whom service may be made," but that *Erie* does not require us to say that this information must appear on the face of the pleadings. We hold that plaintiff Killian's complaint was sufficient to invoke article 2031b (3).

The *Erie* rationale for our result lies in the substantive-procedural dichotomy. The jurisdictional prerequisites to the applicability of Article 2031b are matters of state substantive law which under *Erie* we are bound to accept. We are, however, not bound to follow the state law regarding the way the substantive rights must be pled or shown since such matters are governed by the Federal Rules of Civil Procedure. Hannah v. Plumer, 1965, 380 U.S. 460, 85 S. Ct. 1136, 14 L.Ed.2d 8. A federal court enforcing an obligation or right created by state law "is bound to enforce the obligation [or right] as it finds it, but is not 'bound by the dubious and perhaps conflicting intimations on *elegantia juris* to be found in local decisions' and is not 'imprisoned by procedural niceties relating to amendment of pleadings.'"

Kenney v. Trinidad Corporation, 5 Cir. 1965, 349 F.2d 832, 837, cert. den. 382 U.S. 1030, 86 S.Ct. 652, 15 L.Ed.2d 542, quoting in part from Levinson v. Deupree, 1953, 345 U.S. 648, 651, 73 S.Ct. 914, 916, 97 L.Ed. 1319, 1324. "The purpose of the Erie doctrine * * * was never to bottle up federal courts with 'outcome determinative' and 'integral-relations' stoppers—when there are 'affirmative countervailing [federal] considerations' and when there is a Congressional mandate (Rules) supported by constitutional authority." Hannah v. Plumer, *supra,* 380 U.S. at 473, 85 S.Ct. at 1145, 14 L.Ed.2d at 18, quoting from Lumberman's Mutual Casualty Co. v. Wright, 5 Cir. 1963, 322 F.2d 759, 764.

"The Erie rule is rooted in part in a realization that it would be unfair for the character or result of a litigation materially to differ because the suit had been brought in a federal court.

\*    \*    \*    \*    \*    \*

The [Erie] decision was also in part a reaction to the practice of 'forum-shopping' which had grown up in response to the rule of Swift v. Tyson 304 U.S. at 73–74, 58 S.Ct. at 819–820, 82 L.Ed. at 1191–1192, 114 A.L.R. 1487. That the York test was an attempt to effectuate these policies is demonstrated by the fact that the opinion framed the inquiry in terms of 'substantial' variations between state and federal litigation. 326 U.S. at 109, 65 S.Ct. at 1469, 89 L.Ed. at 2086, 160 A.L.R. 1231. Not only are nonsubstantial, or trivial, variations not likely to raise the sort of equal protection problems which troubled the Court in Erie; they are also unlikely to influence the choice of a forum. The 'outcome-determination' test therefore cannot be read without reference to the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." Hannah v. Plumer, *supra,* 380 U.S. at 467–468, 85 S.Ct. at 1141–1142, 14 L.Ed.2d 14–15.

See also 1 Barron and Holtzoff, Federal Practice and Procedure, § 138 (Wright and Elliott rev. 1969 supp.).

Applying the Hannah v. Plumer analysis to the case *sub judice,* we find that although the choice of the liberal federal pleading rules over the more constrictive McKanna v. Edgar rule "will at this time have a marked effect upon the outcome of [this appeal], the difference between the two rules would be of scant, if any, relevance to the choice of a forum." *Id.* The plaintiff, in choosing his forum, would not be influenced by the variance in the federal and state pleading rules when he could comply with the McKanna v. Edgar requirements by merely adding a few words to his complaint. Likewise, the application of the federal rule would not cause an "inequitable administration of the laws" because plaintiff Killian could have easily complied with the Texas pleading rule if he had been litigating in the state courts. Under Hannah v. Plumer, therefore, the Federal Rules apply and prevail over the conflicting Texas rule.

In this era of economic and corporate mobility there is neither constitutional nor statutory obstacle to subjecting Eyerly Aircraft to a Texas adjudication. In the federal system there are no archaic rules of pleading which would alter this result.

Affirmed.