James E. COTTON

v.

MARSH'S RACING TIRES, INC.,

and

Nowark Tool and Manufacturing Co., Inc.

Civ. A. No. 72–C–75.

United States District Court,
S. D. Texas,
Corpus Christi Division.

Feb. 1, 1973.

Philip A. Schraub, Corpus Christi, Tex., for James E. Cotton.

Leslie Lockett, Corpus Christi, Tex., for Marsh's Racing Tires, Inc.

Richard A. Hall, Corpus Christi, Tex., for Nowark Tool & Mfg. Co., Inc.

## MEMORANDUM

OWEN D. COX, District Judge.

This suit was originally brought in April, 1972, against Marsh's Racing Tires, Inc., and Nowark Tool and Manufacturing Co., Inc. The first pleading filed by Nowark was a motion that this action be dismissed as to it for lack of in personam jurisdiction. Nowark is a corporation organized and doing business at Siloam Springs, Arkansas. The Court granted the motion and ordered the action dismissed as to Nowark on October 20, 1972. Thereafter, both the Plaintiff, James E. Cotton, and Defendant Marsh's Racing Tires, Inc., moved the Court for a rehearing of Nowark's motion and the order of the Court granting it. An evidentiary hearing was held on January 5, 1973, to again consider the question of whether Nowark should be a party to this suit.

The evidence reflects that, until its business relationship with Defendant Marsh's Racing Tires, Inc., Nowark was a small machine shop. In 1969, Marsh's began making new racing tires and, because of the public demand, it decided to also furnish its customers with wheels for the racing tires. Negotiations were initiated by Marsh's and, as a result, the wheels, the rims, and center portions of the wheels needed by Marsh's were manufactured by Nowark pursuant to a trade agreement between the two companies dated February 28, 1970. This agreement was admitted in evidence as Plaintiff's Exhibit 1. The agreement called for Marsh's to purchase, after March 1, 1970, a minimum of 150 wheels per month for at least six months during the calendar year, it being understood the six months need not run consecutively. There were various other provisions in the contract regarding penalties to be assessed against both the buyer and the supplier under certain conditions. During 1970, Marsh's only business was that of manufacturing racing tires. Its tires and the wheels purchased from Nowark were sold in many states within the United States of America. Nowark had other machine shop business, but its contract with Marsh's was a sizeable contract and constituted a large percent of Nowark's business.

Marsh's sold four racing tires and wheels to a muffler shop run by the Flanagan brothers in Kingsville, Texas. On or about the 9th day of May, 1970, those racing wheels and tires were placed on a racing car which was towed to Corpus Christi, Texas. The car had not been driven many miles when Plaintiff was gratuitously helping the Flanagan brothers work on the racing car and undertook to remove the right front tire and the wheel. While in the process of doing this, the wheel failed and exploded. The Plaintiff has alleged serious injuries.

This Court, based upon the testimony of the live witnesses, as well as exhibits and answers to interrogatories, finds that, at the time Marsh's decided to also furnish wheels with the tires, its president discussed with one Bill Smith, president of Nowark, the idea of Nowark building wheels in its machine shop and furnishing them to Marsh's. The initial discussion took place in 1969. Bill Smith was then a member of, or shortly thereafter became a member of, the Board of Directors of Marsh's. He was the only person in Nowark who was in a position to have actual knowledge, so far as the testimony reflects, that the Marsh's Racing Tires' business was of sufficient size as to advertise and sell on a national basis.

However, at the time the trade agreement was entered into, the president of Nowark was Gary Chenoweth. He was

in charge of the actual operation of the Nowark plant. The other owners were not active in its management. Chenoweth supervised and helped with most of the work. There were two machinists and a couple of general workers, and his wife also helped in the plant. Chenoweth himself does not have a great deal of education, and his job was to supervise the work and see that the general repair and machine work was done and the wheels and component parts manufactured for Marsh's were properly put together.

So far as the legal consequences of furnishing wheels to Marsh's was concerned, that was something Chenoweth gave no thought to at all, during the first few months of 1970. The Secretary of Marsh's, Mr. Foreman, made an affidavit that he knew Mr. Chenoweth was aware the wheels would be sold in various states; however, Foreman based his statement on "conversations over the years" and presented nothing more to the Court than conclusions, which carry little weight. There is no convincing testimony that the third member of this Nowark organization, Junior McDougall, actually had any first-hand knowledge of the scope of the business of Marsh's.

Certainly, however, looking at the situation realistically, there must have been enough of this specialized work being done by Nowark for Marsh's that Chenoweth should have had some inkling that all of the wheels were not going to be sold to people in Siloam Springs, Arkansas, and the surrounding area, and, further, under normal circumstances, you would think that he, at least, would have surmised Marsh's had to be selling products in other states than Arkansas. What the Nowark officers knew or should have known concerning Marsh's national activity would also be knowledge of the corporation.

This is not a situation in which Nowark launched itself in the manufacturing business and elected to distribute its manufactured products through a variety of wholesalers in states other than Arkansas. It seems to this Court that Nowark's operation was small and not adequate to fully support all three of its owners. The Court doubts that either Chenoweth or his associates gave any sort of thoughtful consideration as to where these wheels might be sent by Marsh's. Certainly, considering the number of wheels being manufactured, it is not likely that anyone, upon giving it mature consideration, would think all those racing car wheels would stay in the State of Arkansas.

The Defendant Marsh's put in evidence invoices from various national trade magazines, showing advertisements carried in those magazines about Marsh's product. Those were Exhibits 1 through 4. There is no convincing evidence that Nowark or its officers were aware of such advertising. There was testimony regarding racing-circuit groups and various states in which racing is enjoyed, but knowledge of this information cannot be imputed to Nowark. The Defendant Marsh's Exhibit 5 consisted of a number of invoices showing purchases made by Marsh's Racing Tires, Inc., from Nowark Tool and Manufacturing Co., Inc. And, Chenoweth's testimony indicated his company was not able to meet the demand by Marsh's on his facilities. He was still just a small machine shop.

This Court realizes that the case of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877), which used to be the lead case as far as service in personam on out-of-state defendants was concerned, has long since been passed by and the ability to reach out-of-state defendants has been expanded considerably. The cases which seem nearest to our situation are Eyerly Aircraft v. Killian, 5 Cir., 414 F.2d 595, and Coulter v. Sears, Roebuck and Co., 5 Cir., 426 F.2d 1315. However, it is hard to say that such a small machine shop as we have here can be captured in the manner the Plaintiff attempts in this case. Nowark had some equipment of its own and was doing the usual jobs of a machine shop in a small community such as Siloam Springs when it was approached by Marsh's Racing Tires, Inc. In the two cases just cited,

the Defendants complaining were situated, in each case, similar to that of Defendant Marsh's before this Court, rather than Nowark.

There were invoices which Mr. Marsh testified reflected the sale of wheels to Marsh's. These invoices reflected the number of wheels covered and the amounts charged. The testimony was that there were other invoices which had been misplaced or were otherwise not available. There is no evidence to show the total amount of money involved in all of these transactions during the early part of 1970, but there was testimony that Nowark was not able to keep up with the demand and had had to farm-out some of the work done, and thus became financially strapped. Additional equipment had to be rented in order for them to do everything needed in the manufacture of these wheels. The Court concludes that Nowark was, during this period, a small operation.

Although there was testimony that tires, along with the wheels, were sold by Marsh's to customers in Texas, the only specific contact shown was the sale of tires and wheels to Flanagan Brothers. This was enough, under *Eyerly Aircraft* and *Coulter*, to sustain the long-arm jurisdiction against Marsh's. Certainly, since the tires and wheels here involved were sold by Marsh's, that company would be primarily responsible, and if it were established that both Nowark and Marsh's were responsible, any indemnity could be, of course, decided in a suit between the two companies up in their home state. But, to do this would, of course, necessitate the retrial of a sizeable portion of the lawsuit.

The Fifth Circuit has recognized that the scope of the Texas Long Arm Statute is as broad as due process permits. But, it has not yet held that the supplier of items to the manufacturer, who then sells the finished product, under circumstances such as this, can be reached. Dicta in some of the cases does so indicate. But, this Court concludes Nowark, during the early months of 1970, did not have sufficient "minimum contacts" with the State of Texas to warrant in personam jurisdiction; nor did Nowark have such a pattern at that time for the distribution of its wheels or such a volume as to justify the conclusion that it had placed its goods in the "stream of commerce" and thus be subject to in personam jurisdiction here. Nowark may lose its due process protection if it is held to answer in this case in the Southern District of Texas.

The motion of Plaintiff, James E. Cotton, and Defendant, Marsh's Racing Tires, Inc., for rehearing was granted and an evidentiary hearing was held to review the Court's previous decision dismissing Nowark from this action. The Court has not changed its position. It is, therefore, ordered by this Court that the original order signed on the 20th day of October, 1972, shall remain in full force and effect, and this action is dismissed as to the Defendant Nowark Tool and Manufacturing Co., Inc.