**Ruben GARZA et al., Appellants,**

v.

**FRANK HRUBETZ & COMPANY, INC.,
Appellee.**

**No. 15178.**

Court of Civil Appeals of Texas,
San Antonio.

May 30, 1973.

Pedro P. Garcia, Eduardo E. DeAses, Corpus Christi, for appellants.

Meredith & Donnell, Corpus Christi, for appellee.

KLINGEMAN, Justice.

This is an appeal from an order sustaining a plea to the jurisdiction. Ruben Garza and Maria A. Castillo sued Moore's Modern Show, a resident of Zapata County, Texas, and Frank Hrubetz Company,[1] an Oregon corporation, for damages for personal injuries sustained by plaintiffs while riding in an amusement ride referred to as a "paratrooper ride." The accident occurred in Falfurrias, Brooks County, Texas. Moore's Modern Show was the owner and operator of such ride, and Frank Hrubetz Company was alleged to be the manufacturer of such ride. Jurisdiction is sought to be maintained as to Hrubetz under the provisions of Article 2031b, Vernon's Tex.Rev.Civ.Stat.Ann., the Texas "Long Arm" statute. A plea to the jurisdiction was filed by Hrubetz under the provisions of Rule 120a, Texas Rules of Civil Procedure, the special appearance rule; and after a hearing, the court sustained such plea to the jurisdiction, or-

---

1. It appears from the record that Frank Hrubetz Company and Frank Hrubetz & Company, Inc. are one and the same entity.

dered a severance as to Hrubetz, and dismissed the cause of action insofar as it pertained to plaintiffs' claim against Hrubetz.

Plaintiffs' sole point of error is that the trial court should not have granted the plea to the jurisdiction filed by the defendant Hrubetz because by its own admissions, Hrubetz had sufficient contacts within the state of Texas to submit itself to the jurisdiction of the Texas court.

The scope of permissible state jurisdiction over the person of foreign corporations has broadened considerably in the last twenty-five years, and under the holdings of the Supreme Court of the United States in International Shoe Company v. State of Wash., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), a state can assert in personam jurisdiction over a foreign corporation, assuming proper notice is given, if the foreign corporation has had certain minimum contacts with the state. In such cases the Supreme Court held that due process requires only that in order to subject the defendant to a judgment in personam, if he be not present within the territory of the forum, he should have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

Our Supreme Court in O'Brien v. Lanpar Company, Tex., 399 S.W.2d 340 (1966), reviewed the United States Supreme Court cases above cited and set forth three basic factors which should coincide if jurisdiction over a nonresident corporation is to be entertained: (1) a nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the foreign state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the foreign state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the foreign state, the relative convenience of the parties, the benefits and protection of the laws of the foreign state afforded the respective parties, and the basic equities of the situation. See also: National Truckers Service, Inc. v. Aero Systems, Inc., 480 S.W.2d 455 (Tex.Civ. App.—Fort Worth 1972, writ ref'd n. r. e.); Sun-X International Company, Inc. v. Witt, 413 S.W.2d 761 (Tex.Civ.App.—Texarkana 1967, writ ref'd n. r. e.).

It is appellee's contention that the court properly sustained its plea to the jurisdiction because under the record the second factor is clearly not satisfied in that the cause of action did not arise out of any act or transaction of appellee in the state of Texas.

In their petition, plaintiffs assert that as they were riding in the paratrooper ride, they were caused by said amusement device to be lifted up to the sky approximately forty feet from the ground; and while they were in such position, the amusement device broke, causing both plaintiffs to be dropped to the ground, inflicting serious bodily injury to both of them. For grounds of recovery, plaintiffs rely on the theory of res ipsa loquitur, and in the alternative that both defendants were guilty of negligence in the operation and maintenance of the paratrooper ride in that one of the main metal rods holding the seat or canopy in which plaintiffs were sitting broke, causing plaintiffs to be dropped to the ground.

The evidence at the hearing consisted of certain written interrogatories and answers thereto, propounded to appellee by plaintiffs. Such interrogatories show that appellee is an Oregon corporation; that it is not registered in Texas; that it does not have a permit to do business in Texas; that it does not have any business outlets in Texas; and that it does not have any business subdivisions in Texas. Such interrogatories further show that on several occasions, appellee had done business with Moore's Modern Show by receiving tele-

phone orders for equipment from Moore's and sending shipments of equipment to Moore's. Appellee has also done business with other companies in the state of Texas, and an exhibit lists nineteen customers in Texas with whom appellee has done business. The record also contains copies of a number of invoices filed as exhibits showing shipment of goods to Texas customers, both on a "C.O.D." basis, and on an open account basis.

Appellee asserts that such interrogatories show that it neither manufactured, assembled, nor sold the subject amusement ride in which plaintiffs were injured, nor did it manufacture the part that broke.[2]

Appellants rely strongly on Everly Aircraft Company v. Killian, 414 F.2d 591 (5th Circuit 1969). This was a products liability action against Everly Aircraft Company, an Oregon corporation, and Jack Everly, its president, to recover damages sustained by Jan Killian in a fall from an amusement ride in Dallas, Texas. Such suit was filed in the United States District Court of the Northern District of Texas at Dallas. Everly Aircraft Company was the manufacturer of the ride known as a Rock-O-Plane. Service upon both defendants was accomplished through the Texas "Long Arm" statute, Article 2031b, supra. The evidence showed that the ride in question was manufactured by Everly, and sold by such corporation to a Chicago amusement show some twenty years before the accident involved; that during the year 1964, such Chicago amusement company sold the ride to another amusement company; and that over a period of years the ride had traveled through numerous states. In its opinion, the Court stated: "The question in this case, therefore, is whether the unrelated business contacts plus the introduction of the ride into interstate commerce are sufficient to support Texas in personam jurisdiction over Everly Air-

---

2. The pertinent parts of the interrogatories propounded by appellants to appellee under dates of February 22, 1972, and July 6, 1972, and the answers thereto are as follows:

*Interrogatories of February 22, 1972*

Question No. 10: "Did your corporation manufacture the Fruehauf trailer and paratrooper ride, serial number 45152?"
Answer: "No."

Question No. 11: "To whom did your corporation sell the above ride known as the Paratrooper Ride? State the name, permanent address, date of sell [sic] and method of delivery of such ride to such buyer."
Answer: "Defendant assumes that the name 'Paratrooper Ride' refers to the machine being operated by Moore's Modern Shows on or about October 24, 1970; if so, Defendant did not sell that particular ride to anyone."

Question No. 16: "Did your corporation assemble the Fruehauf trailer and paratrooper ride, serial number 45152?"
Answer: "No."

Question No. 22: "Please attach and make a part of these interrogatories, copies of all catalogs in your possession which refer to the paratrooper ride including all adaptations of different cars or components to the paratrooper ride which have taken place since the manufacture of such ride."

Answer: "Attached hereto as Exhibit 'C' are four colored photographs and two advertisements relating to the 'Paratrooper' Ride which Defendant does manufacture; Defendant points out again that the ride on which the Plaintiffs were injured October 24, 1970 was not one manufactured by Defendant."

*Interrogatories of July 6, 1972*

Question No. 4: "Did Frank Hrubetz & Company, Inc., or a predecessor company, individual or corporation or partnership, manufacture any part of the paratrooper ride on which these changes or suggestions were made?"
Answer: "They may have made the main frame as a Spitfire."

Question No. 29: "Did Frank Hrubetz & Company, Inc., manufacture the paratrooper ride being operated by Moore's Modern Shows on or about October 21, 1970?"
Answer: "No. We may have manufactured it originally as a Spitfire and it may have been altered by parties unknown."

Question No. 30: "Did Frank Hrubetz & Company, Inc., manufacture any part of such paratrooper ride?"
Answer: "See No. 29."

Question No. 54: "Did Frank Hrubetz & Company, Inc., or any predecessor company, corporation or business, manufacture the part that broke on October 24, 1970 and made the basis of this suit?"
Answer: "No."

craft. We hold that these contacts are sufficient." [3] 414 F.2d at 595.

█ Such case differs from the case before us in that in *Everly* it was undisputed that the Rock-O-Plane ride in question was manufactured and sold by Everly Aircraft, while in our case there is evidence that appellee neither manufactured, assembled, nor sold the subject amusement ride, and that it did not manufacture the part of the ride that allegedly broke. The trial court impliedly found that the asserted cause of action did not arise out of, and was not connected with, any act or transaction of appellee in the state of Texas. There is evidence in the record to support such implied finding of the trial court.

The judgment of the trial court is affirmed.

CADENA, Justice.

I concur in the result.

3. In its opinion, the Court further stated: "Although there is nothing in the record to indicate that Everly Aircraft ever saw the ride after it was shipped to Chicago, the record does clearly reflect that Everly Aircraft contemplated that the ride would ambulate from state to state throughout the nation and that it would eventually tour Texas. Moreover, Everly Aircraft through other transactions had made numerous and repeated contacts with Texas and has purposefully availed itself of the protections of her laws. * * * These contacts with Texas were neither occasional nor sporadic—they were both continuous and substantial." 414 F.2d at 593–595.