**ESTES PACKING COMPANY, Appellant,**

v.

**KADISH & MILMAN BEEF CO., INC., Appellee.**

No. 17665.

Court of Civil Appeals of Texas, Fort Worth.

Nov. 14, 1975.

Rehearing Denied Dec. 12, 1975.

Simon & Simon, and John W. Hughes, Fort Worth, for appellant.

Shannon, Gracey, Ratliff & Miller, and Eugene J. Dozier, Fort Worth, for appellee.

## OPINION

BREWSTER, Justice.

The plaintiff, Estes Packing Company, a Texas corporation, sued the defendant, Kadish & Milman Beef Company, Inc., a foreign corporation, to recover sums allegedly owed plaintiff by defendant by reason of the sale of some beef to defendant by plaintiff.

Service of process was had on defendant under the Texas long-arm statute (Article 2031b, V.A.C.S.). The defendant then made a special appearance in the case, as provided for by Rule 120a, T.R.C.P., for the purpose of objecting to the trial court assuming jurisdiction over it. At the conclusion of the hearing of that matter the trial court concluded that it lacked jurisdiction over the defendant foreign corporation in this in personam action and dismissed the plaintiff's case. This judgment of dismissal is the one being appealed from by plaintiff.

We reverse and remand.

For convenience we will refer herein to the plaintiff as "Estes", to the defendant as "Kadish", and to American Brokerage Company, which is involved in the case, as "the Broker."

In deciding whether the defendant foreign corporation can be subjected to the jurisdiction of the courts of the forum state, two questions must be answered. The first is whether Texas law (Art. 2031b) provides for the exercise of jurisdiction over the non-resident defendant under the facts present in this case. If the answer to that question is "Yes," the court must then determine the answer to this second question: whether the exercise of jurisdiction over the non-resident defendant pursuant to that state law would under the particular facts

of this case violate the due process clause of the 14th Amendment to the United States Constitution. See *Atwood Hatcheries v. Heisdorf & Nelson Farms*, 357 F.2d 847 (U.S.Ct.App., 5th Cir., 1966), and cases therein cited under footnote 12 on this point, and *Pizza Inn, Inc. v. Lumar*, 513 S.W.2d 251 (Eastland Civ.App., 1974, writ ref., n. r. e.).

If the answer to the first question is "No," then the trial court would lack jurisdiction. Even if the answer to the first question is "Yes," the trial court would still lack jurisdiction over the non-resident defendant if the assumption of jurisdiction over the non-resident defendant by the trial court under the facts of this case would violate the due process clause of the Federal Constitution.

But if the answer to the first question is "Yes," and if taking jurisdiction over the non-resident defendant does not under the facts of the particular case violate the due process clause of the Federal Constitution, then the trial court does have jurisdiction over the non-resident defendant.

The trial court found facts as follows: Plaintiff (Estes) is a Texas corporation with principal place of business in Tarrant County; defendant foreign corporation (Kadish) is a Massachusetts corporation with principal place of business in Boston, Mass.; American Brokerage's offices are in Chicago, Ill; American Brokerage orally ordered beef from plaintiff; the Broker then telephoned defendant in Boston advising that it had beef for sale and defendant from Boston ordered the beef from the Broker for delivery to it in Boston; the Broker then prepared a written confirmation giving shipping instructions stating that the beef was to be sent by truck to defendant's plant in Boston and the Broker sent both plaintiff and defendant a copy; prior to the time the beef in question arrived by truck at defendant's plant in Boston, Kadish had no notice that Estes was in any way at all involved in the transaction; up to that time Estes and Kadish had had no negotiations or communication with each other about the meat;

the shipment consisted of 62½ cattle carcasses; the Broker charged Estes a commission on the sale; when the shipment arrived. at defendant's plant in Boston Kadish inspected the truck load of meat and accepted the carcasses of 16½ of the cattle and rejected the rest of the load, contending that it was not in good condition; the defendant then mailed to plaintiff in Texas its check for $7,305.22, drawn on defendant's Massachusetts bank, in payment for the beef that it did accept; this check did have written on its back the following: "By endorsement, this check is in full payment for all debts incurred to Estes Company by Kadish & Milman Beef Co., Inc., 138 Newmarket Square, Boston, Mass."; the plaintiff refused to accept the check with that endorsement on it and returned it to Kadish.

The undisputed evidence showed that when Estes prepared this meat and placed it in the truck of an independent contractor in Fort Worth, Texas, for delivery to defendant in Boston, Mass., that he placed with it his invoice that clearly showed that the meat contained therein belonged to Estes Packing Co., and that plaintiff was offering it for sale to Kadish at the prices set out on the invoice which was numbered 9698. On this invoice which accompanied the load of meat was written the words, "All Bills Payable in Fort Worth." Also accompanying the load of meat was a "shipping manifest" and a bill of lading. The shipping manifest clearly showed that this truck load of meat was being sold by Estes to Kadish and that it did not belong to the Broker. The accompanying invoice showed the same thing.

Estes' point of error No. 2 is that the trial court erred in concluding that Kadish was not at any time doing business in Texas within the meaning of Art. 2031b, V.A.C.S.

We sustain that point.

Article 2031b, V.A.C.S., provides in substance that service of process can be made on any foreign corporation or non-resident

natural person and the others therein named by serving same on the Secretary of State in the manner therein provided for in instances where the entity referred to engages in business in this State. And Section 4 of that statute provides: *"For the purpose of this Act,* and without including other acts that may constitute doing business, *any foreign corporation . . . or* non-resident natural person *shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, . . . ."* (Emphasis added.).

The invoice, the shipping manifest, and the bill of lading accompanying the particular truck load of meat involved at the time it arrived at defendant's plant all showed that that particular load of meat belonged to Estes and that he was offering it for sale to Kadish at the particular prices specified on the invoice for the various types of meat. Kadish, seeing that invoice, accepted 16½ of the 62 cattle carcasses that were in the shipment and took them and resold them. The undisputed evidence shows that after doing this Kadish mailed to Estes, in Fort Worth, Texas, as payment for the meat it bought out of the truck load its check for $7,305.22 and the writing that Kadish placed thereon showed that the check was sent in payment for that part of the truck load of meat that it purchased from Estes as covered by the Estes Invoice No. 9698. The prices remitted by Kadish in its check that it sent Estes in payment for the 16½ beef carcasses that it admittedly purchased from Estes were the same prices per pound that Estes had, in its invoice, offered to sell the meat to Kadish for.

We hold that this undisputed evidence that we have referred to shows that a contract was entered into between Estes and Kadish by the terms of which Kadish agreed to buy from Estes at least that part of the truck load of meat that it did take from Estes' truck, and that it agreed to pay therefor the prices per pound as specified on the invoice, for the quantities of the various grades of meat that it kept and resold. This suit is brought, at least in part, to recover from Kadish the price that the parties had agreed upon for the meat that Kadish admittedly purchased out of Estes' truck load of meat.

The undisputed evidence in the case also shows that a part of the agreement between Kadish and Estes was that Kadish would pay Estes for the meat that he purchased on the occasion in question in Fort Worth, Texas.

The undisputed evidence that we refer to that leads us to the conclusion we have just expressed is the following: Estes' Invoice No. 9698 accompanied Estes' truck load of meat that it sent to Kadish's plant in Boston and Kadish came into possession of this Invoice No. 9698 when it inspected the load of meat; Kadish made no objection to the provision in the invoice stating that all bills were payable in Fort Worth, Texas, nor did it object to the prices specified thereon for the meat; in fact Kadish recognized and complied with the proviso contained in the invoice as to where the meat was to be paid for by mailing its check to Estes in Fort Worth, Texas, in the amount of $7,305.22 for the purpose of paying for the number of pounds of meat that it admittedly took from Estes' truck load, and the prices that it used to determine the amount of the check were the per pound prices that Estes had specified on the invoice; and the check itself stated that it was in payment for a part of the meat covered by Estes' Invoice No. 9698.

Because of these undisputed facts the terms of the invoice providing "All Bills Payable in Fort Worth" became a part of the contract between Kadish and Estes relating to Kadish's purchase from Estes of the part of the truck load of meat that Kadish admittedly purchased. *Beall v. Hardwicke-Etter Company,* 460 S.W.2d 516 (Waco Civ.App., 1970, writ dism.); *Harrison v. Facade, Inc.,* 355 S.W.2d 543 (Dallas Civ. App., 1962, no writ hist.); and *Fleetwood Construction Co., Inc. v. Western Steel Co.,*

510 S.W.2d 161 (Corpus Christi Civ.App., 1974, no writ hist.).

From what we have said it is apparent that Art. 2031b, V.A.C.S. does provide for the exercise of jurisdiction by Texas courts over the foreign corporate defendant under the facts present in this case. This is true because the defendant was doing business in Texas within the meaning of that Texas statute since it entered into a contract with the plaintiff, a resident of Texas, to buy at least a part of Estes' truck load of meat and Kadish agreed to partly perform that contract in Texas by Kadish paying Estes in Texas for the meat. See *Pizza Inn, Inc. v. Lumar*, 513 S.W.2d 251 (Eastland Civ.App., 1974, writ ref., n. r. e.).

It follows that the answer to the first question referred to above is "Yes."

██ In Estes' point of error No. 1 he contends that the trial court erred in sustaining Kadish's objection to jurisdiction and in dismissing his case for want of jurisdiction. In its 4th and 5th points of error it contends that the trial court erred in concluding that Kadish did not have such minimal contacts as are required by the due process clause of the 14th Amendment to the U. S. Constitution in order to subject it to the jurisdiction of Texas courts.

We sustain these two points of error.

To rule on these two points of error we must determine the answer to the second question posed above. Restating the question, it is: Would the exercise of jurisdiction over the non-resident foreign corporation pursuant to Art. 2031b, V.A.C.S. under the particular facts of this case violate the due process clause of the 14th Amendment to the U. S. Constitution?

We hold that the proper answer to this second question is that the exercise of in personam jurisdiction by the trial court over the non-resident corporate defendant pursuant to Art. 2031b does not, under the particular facts of this case, violate the due process clause of the 14th Amendment to the U. S. Constitution. We will hereinafter state our reasons for reaching that conclusion.

On this due process question the U. S. Supreme Court in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) said: ". . . due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

The Texas Supreme Court in *O'Brien v. Lanpar Company*, 399 S.W.2d 340 (1966), cited with approval the case of *Tyee Construction Co. v. Dulien Steel Products Inc.*, 62 Wash.2d 106, 381 P.2d 245 (1963) which case held that three basic factors must coincide if jurisdiction over a non-resident corporation is to be entertained. The following is from the opinion in that case: " ' *  * Such would appear to be: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.' "

The undisputed evidence in this case showed that Kadish was a Massachusetts corporation; none of its officers or employees have ever been in Texas on business for it; it has never had an office or telephone in Texas; it has never shipped goods into Texas and has never advertised here or sold anything in Texas; it has no warehouse here and has never applied for a permit to do business in Texas, and has never owned property here. Prior to the time of arrival

of Estes' truck load of meat at Kadish's plant in Boston, Massachusetts, there had been no direct contact between Estes and Kadish.

The undisputed evidence shows that the only contact that Kadish had in Texas was when it sent by mail to Estes in Fort Worth, Texas, its check for $7,305.22 in payment for the meat that it had purchased out of Estes' truck load of meat that had been delivered by Estes to Kadish in Boston, Massachusetts. On the back of that check that Kadish sent to Estes in Texas in payment of Estes' meat that Kadish had admittedly bought from Estes and sold for a profit, Kadish had printed the following: "Payment in full for Trailer # C2887 shipped 5/23/73. Beef arrived Off Condition and with permission with Estes Company, we used the following cattle, namely:

```
"4 Choice Steers – 3250 × 71½ = 2323.75
 5 Ung. Steers  – 3690 × 68½ = 2527.65
 6 Brk. Ut. Cows– 4361 × 62   = 2703.82
                                 ───────
                                 7555.22
Less: Unloading                  – 50.00
Reloading per agreement         –200.00
                                 ───────
                                 7305.22
```

"By endorsement, this check is in full payment for all debts incurred to Estes Company by Kadish & Milman Beef Co., Inc., 138 Newmarket Square, Boston, Mass."

In addition to sending this check into Texas to pay for the meat that it admittedly purchased out of Estes' load, Kadish sent the check to Estes in an effort to get him to endorse the check and thus effect an accord and satisfaction of all claims that Estes had against Kadish arising out of this entire transaction, including Kadish's refusal to accept the entire truck load of meat.

By placing the quoted endorsement on the back of the check, Kadish made it impossible for Estes to accept the check in payment for its meat that Kadish admittedly bought, took, and sold, the result being that up to now Kadish has gotten over $7,300.00 worth of Estes' meat without paying for it. This suit is in part to recover the price of Estes' meat that Kadish admittedly bought and has not paid for.

Texas' purpose in enacting its long-arm statute (Art. 2031b) was to exploit to the maximum the fullest reach permissible under Federal Constitutional restraints. *Atwood Hatcheries v. Heisdorf & Nelson Farms*, 357 F.2d 847 (U.S.Ct. of App., 5th Cir., 1966), and *National Truckers Service, Inc. v. Aero Systems, Inc.*, 480 S.W.2d 455 (Fort Worth Civ.App., 1972, writ ref., n. r. e.).

We hold that the three basic factors referred to in the *O'Brien* and *Tyee Construction Company* cases, supra, which three factors are above set out, are present in this case and that Kadish did maintain the minimum contacts with the forum state that were necessary to make it amenable to in personam jurisdiction of Texas courts.

In the case of *Uvalde Rock Asphalt Co. v. Consolidated Carpet Corp.*, 457 S.W.2d 649 (Beaumont Civ.App., 1970, writ ref., n. r. e.), the contract between plaintiff (the resident) and defendant (the foreign corporation) provided that the foreign corporation "'. . . agrees to pay promptly at the general offices of the Manufacturer in San Antonio, Texas, all invoices for goods purchased.'" In passing on questions similar to those before us in this case, the court there said, at page 651: "Carpet Corporation made two payments to Uvalde in Texas in accordance with the contract. *It is our opinion that the payment of $3,473.73 in Texas determined that the foreign corporation, Carpet Corporation, had sufficient contact, ties or relations with the forum, and participated in the kind of activities in Texas so as to make it subject to the jurisdiction of the State of Texas.* Such contacts, minimal though they may be on the part of Carpet Corporation, do not offend the traditional notions of fair play and substantial justice." (Emphasis added.)

The question under discussion was also involved in *Standard Leasing Co. v. Performance Systems, Inc.*, 321 F.Supp. 977 (U.S.Dist.Ct., Northern Dist. of Texas,

1971). There a Tennessee corporation entered into an agreement with plaintiff, a Texas resident, to pay plaintiff in Amarillo, Texas, lease rentals and other payment obligations as they became due. Defendant sent some payments to plaintiff in Texas and then defaulted. That court held that defendant's contacts in Texas through making the payments were sufficient to give the Texas Court in personam jurisdiction over defendant in a suit brought to collect the unpaid and overdue rentals.

In *Custom Leasing, Inc. v. Gardner*, 307 F.Supp. 161 (U.S.Dist.Ct., Miss., 1969) a Texas corporation sued a resident of Mississippi in Texas to recover unpaid rentals that had accrued under an equipment leasing agreement. The agreement was finally accepted by plaintiff in Texas. It contained this clause: " 'Payable and performable in Lubbock, Lubbock County, Texas.' " The defendant made payment to the plaintiff in Texas of some of the accrued rentals. The court held that the non-resident there by paying rentals in Texas had sufficient contacts with the forum state to give its courts in personam jurisdiction over him in a suit brought to collect unpaid rentals.

It has been held that when the first two factors that were enumerated in the *Tyee Construction Company* and *O'Brien* cases, supra, and which factors are hereinabove set out, are satisfied and are present in the case, there is nothing offensive or inherently unfair in asking the defendant to litigate in the State of Texas. See *National Truckers Service, Inc. v. Aero Systems, Inc.*, supra and *Standard Leasing Co. v. Performance Systems, Inc.*, supra.

Other cases that we believe support the holding we make are: *National Truckers Service, Inc. v. Aero Systems, Inc.*, 480 S.W.2d 455 (Fort Worth Civ.App., 1972, writ ref., n. r. e.), and *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.