**NATIONAL TRUCKERS SERVICE, INC.,**
Appellant,

v.

**AERO SYSTEMS, INC., Appellee.**

No. 17299.

Court of Civil Appeals of Texas,
Fort Worth.

April 21, 1972.

Rehearing Denied May 26, 1972.

**456**

Hudson, Keltner, Smith & Cunningham, and Hershel R. Payne, Fort Worth, for appellant.

Cantey, Hanger, Gooch, Cravens & Munn, and Sloan B. Blair, Fort Worth, for appellee.

## OPINION

LANGDON, Justice.

National Truckers Service, Inc., plaintiff (appellant), filed suit against Aero Systems, Inc., defendant (appellee), a Florida corporation, seeking to collect a debt arising out of a written guaranty agreement executed by Aero Systems, Inc. Service of process was obtained on Aero Systems, Inc., pursuant to the provisions of Article 2031b, Vernon's Ann.Tex.Civ.St. Aero Systems, Inc., filed a special appearance pursuant to the provisions of Rule 120a, Texas Rules of Civil Procedure, objecting to the jurisdiction of the trial court on the ground that defendant, Aero Systems, Inc., was not amenable to process issued by the courts of Texas. The trial court sustained defendant's special appearance and rendered judgment dated September 10, 1971, by which it dismissed plaintiff's suit against defendant, Aero Systems, Inc., for want of jurisdiction over the person or property of defendant, Aero Systems, Inc.

The appellee concurs in the above statement of the nature and result of the suit and adds that at the hearing the parties stipulated as follows:

"It is stipulated that the defendant, Aero Systems, Inc., is a foreign corporation and is not within the jurisdiction of this Court or amenable to the process of this Court, unless the evidence produced by plaintiff at this hearing establishes the contrary."

This appeal from the judgment of dismissal is based upon three points of error by which the appellant asserts that the trial court erred (1) in holding that the plaintiff was not a resident of the State of Texas within the meaning of Art. 2031b, V.A.T.S.; (2) in sustaining defendant's special appearance and dismissing this suit for want of jurisdiction over the person or property of the defendant; and (3) in dismissing plaintiff's suit for want of jurisdiction over the person or property of defendant, Aero Systems, Inc., because the undisputed facts show that defendant corporation had sufficient minimum contacts with the State of Texas that the maintenance of this suit does not offend traditional notions of fair play and substantial justice.

We reverse and remand.

In this opinion National Truckers Service, Inc., will be referred to as NTS or as plaintiff or appellant. The Florida corporation, Aero Systems, Inc., will be referred to as Aero, or as appellee or defendant.

Service of process was obtained on Aero under the provisions of Art. 2031b, V.A.T.S. All parties agree that service of process was properly made pursuant to the provisions of Art. 2031b. The provisions of this statute pertinent to this appeal are as follows:

"Sec. 3. Any foreign corporation, association, joint stock company, partnership, or non-resident natural person that engages in business in this State, irrespective of any Statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such foreign corporation, joint stock company, association, partnership,

or non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party.

"Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State."

We will first discuss Aero's basic argument to the effect that NTS, being a Maryland corporation, was not a resident of the State of Texas and therefore did not meet the requirement as set out in Sec. 4 of Art. 2031b. The only evidence is the testimony of Collins Burton, President of NTS, and a stipulation that defendant, Aero, is a foreign corporation. The evidence is summarized as follows:

1. Since April, 1964, NTS has maintained and still maintains its only corporate offices and its principal place of business in Fort Worth, Tarrant County, Texas. It does not maintain offices at any place other than Fort Worth, Tarrant County, Texas.

2. In February, 1969, NTS became a subsidiary of Peterson, Howell & Heather, a Maryland corporation, and at that time incorporated under the laws of the State of Maryland but was also domesticated in the State of Texas, where it maintains its principal office and place of business.

Fletcher Cyc. Corp. (Perm. Ed.) Vol. 8, Sec. 4029, "Corporation as 'citizen,' 'resident' or 'inhabitant' for jurisdictional purposes—In general," states that: "As a general rule, for jurisdictional purposes, corporations are deemed 'residents' or 'inhabitants' of particular places, and such place is usually the jurisdiction in which it was incorporated. The rule universally obtaining in both England and the United States is that a company, for jurisdictional purposes, may have a domicile both where it was created and where it transacts business."

The universal rule above referred to has been followed in the cases of United Barge Co. v. Logan Charter Service, Inc., 237 F.Supp. 624 (U.S.D.C., Minn., 1964); C. H. Leavell & Company v. Doster, 211 So.2d 813 (Miss.Sup., 1968); and Nottingham v. Newmarket Mfg. Co., 84 N.H. 419, 151 A. 709 (1930). See other authorities cited under Sec. 4029 of Fletcher, supra.

No Texas cases have been cited and we have been unable to find any Texas decision relating specifically to whether or not a foreign corporation licensed to do business in Texas is a "resident of the State" as that term is used in Art. 2031b, V.A.T.S.

The Texas Business Corporation Act, Vol. 3A, V.A.T.S., Art. 8.02, provides that:

"A foreign corporation which shall have received a certificate of authority under this Act shall, . . . enjoy the same, but no greater, rights and privileges as a domestic corporation organized for the purposes set forth in the application pursuant to which such certificate of authority is issued; . . . . "

In the case of Pittsburg Water Heater Co. v. Sullivan, 115 Tex. 417, 282 S.W. 576 (Tex.Com.App., 1926), the court said: "But we are clear in our view that, under the decisions of our courts, and under the express provision of our statutes aforesaid, a foreign corporation is, in any event, a resident of that county in Texas where its principal office is maintained."

█ "It is apparently the settled law that the residence or domicile of a corporation, domestic or foreign, is where it maintains its principal place of business." Merchants Fast Motor Lines v. Levens,

161 S.W.2d 853 (Amarillo Tex.Civ.App., 1942, no writ hist.).

■ "It is the general rule that a corporation is an inhabitant of the state under whose law it is incorporated but that it has a residence wherever it conducts its ordinary business." Mergenthaler Linotype Co. v. Herrmann, 211 S.W.2d 633 (Fort Worth Tex.Civ.App., 1948, no writ hist.).

■ "A corporation's residence, in legal contemplation, is the place where it maintains its office and transacts its business— its principal place of business. Its place of residence is the place where its corporate affairs are conducted, and we think such place is, and must be, understood to be and mean its principal place of business. We know of no authority in conflict with this view. On the contrary, the decisions support it. [C. E.] Harris [& Co.] v. [C. B.] Cozart Co., [Tex.Civ.App.,] 178 S.W. 733; [Chicago, Danville and Vincennes] Railway Co. v. Bank, 82 Ill. 495; Plummer— [Lewis Co.] v. Francher, 111 Miss. 656, 71 South. 908." Sanders v. Farmers' State Bank, 228 S.W. 635 (Dallas Tex.Civ.App., 1921, no writ hist.).

See also Jaques Power Saw Co. v. Womble, 207 S.W.2d 206 (Waco Tex.Civ.App., 1947, no writ hist.); Handy v. Uniroyal, Inc., 298 F.Supp. 301 (U.S.D.C., Del., 1969); and Wirt Franklin Petroleum Corporation v. Gruen, 139 F.2d 659 (5th Cir., 1944).

■ In applying the rules announced by the authorities above cited, to the facts of this case we find and hold that NTS, a foreign corporation, licensed to do business in the State of Texas, is a "resident of the State" as that term is used in Art. 2031b. We agree with the Mississippi court in C. H. Leavell & Company v. Doster, supra, in stating that in our opinion it would be a denial of equal protection of the laws to permit a suit against a foreign corporation legally qualified to do business in Texas and to deny it access to our courts in initiating a suit.

We next consider the question of whether or not the Florida corporation, Aero Systems, Inc., has had sufficient minimum contacts with the State of Texas so that the State of Texas could assert in personam jurisdiction over the Florida corporation.

The testimony of Collins Burton, President of NTS and the instruments produced in evidence relating to this point are summarized as follows:

1. NTS had been doing business with a corporate subsidiary of Aero and the subsidiary's account had become quite delinquent.

2. NTS had taken steps to cancel all credit cards issued to the subsidiary corporation, Transystems, Inc.

3. Aero, acting through its president, Robert G. Holmes, Jr., agreed to guarantee any and all debts of Transystems, Inc., owing to NTS.

4. A guaranty agreement was executed by Aero (presumably in the State of Florida) and mailed to the offices of NTS in Fort Worth, Texas.

5. The guaranty contract and agreement was accepted by NTS at its offices in Fort Worth, Texas, and in reliance on said guaranty agreement NTS continued to extend credit to Transystems, Inc.

6. The guaranty contract and agreement on its face specifically provided in two separate places that all payments would be made at the offices of NTS in Fort Worth, Tarrant County, Texas. The guaranty agreement also specifically provides that: "The undersigned Guarantors further agree that this guaranty is performable by the undersigned Guarantors, individually, jointly and severally, at Fort Worth, Tarrant County, Texas."

7. After such guaranty agreement was accepted by NTS in Fort Worth, Tarrant County, Texas, Transystems, Inc., again defaulted in its payment to NTS and it demanded payment from Aero pursuant to the guaranty agreement.

8. Aero's president, Robert G. Holmes, Jr., informed Collins Burton that its sub-

sidiary corporation, Transystems, Inc., did not have sufficient cash to pay NTS, but payment would be made to NTS by Aero.

9. NTS thereafter was paid certain amounts on the indebtedness.

It is apparent from the facts above summarized that Aero has engaged in business in the State of Texas under and pursuant to the terms of Art. 2031b. The written guaranty contract and agreement described above was entered into by Aero and mailed into the State of Texas where it was accepted by NTS at its principal office and place of business in Fort Worth, Tarrant County, Texas. In at least three separate places the guaranty agreement provided that it would be performable in the State of Texas in that all payments were to be made at the offices of NTS in Fort Worth, Tarrant County, Texas.

In construing Art. 2031b, numerous court decisions have held that " ' "the Texas purpose was to exploit to the maximum the fullest permissible reach under federal constitutional restraints." ' " Eyerly Aircraft Co. v. Killian, 414 F.2d 591 (5th Cir., 1969).

■ In O'Brien v. Lanpar Company, 399 S.W.2d 340 (Tex.Sup., 1966) involving the Illinois long-arm statute, containing language similar to that of Art. 2031b, the court reviewed and discussed International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) and determined that three basic factors should coincide if jurisdiction over a non-resident defendant is to be entertained. (1) The non-resident defendant or foreign corporation must purposely do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice.

■ In applying the three basic factors set forth in O'Brien to the facts of the case at bar we find and hold that Aero did maintain such minimum contacts with the State of Texas so as to be amenable to in personam jurisdiction. The only testimony before this Court is that a guaranty agreement and contract was mailed into the State of Texas where it was accepted in Fort Worth, Tarrant County, Texas, by NTS. The defendant corporation agreed that the contract was to be performable in the State of Texas. It is unquestioned that this cause of action arises out of Aero's alleged default in making the payments under the terms of the guaranty agreement. As has been noted by the Court in Standard Leasing Co. v. Performance Systems, Inc., 321 F.Supp. 977 (U.S.D.C., N.D.Tex., 1971) when the first two factors are satisfied there is nothing offensive or inherently unfair in asking the defendant to litigate in the State of Texas.

In Standard Leasing Company the Court was construing a letter agreement mailed into the State of Texas which provided that payment was to be made under the terms of the letter agreement in Amarillo, Potter County, Texas. It was held that the foreign corporation had sufficient contacts with Texas and in fairness could be required to defend a suit for the alleged default of payments in Texas.

In Uvalde Rock Asphalt Co. v. Consolidated Carpet Corp., 457 S.W.2d 649 (Beaumont Tex.Civ.App., 1970, ref., n. r. e.) the court discussed extensively the O'Brien v. Lanpar Company, supra, case and applied the three factor test to determine whether or not the foreign corporation had minimum contacts with the State of Texas. The case involved a contract executed by defendant in the State of Arizona, mailed to the plaintiff in Texas and there accepted and mailed back to the defendant in Arizona. The contract provided that payment was to be made under its terms in San Antonio, Texas. Two payments were made to Uvalde in Texas in accordance with the contract and defendant defaulted in making further payments. It was held that the foreign corporation had sufficient contacts, ties or relations with the forum, and participated in the kind of activities in Texas so as to

**460**

make it subject to the jurisdiction of the State of Texas.

See also Castle v. Berg, 415 S.W.2d 523 (Dallas Tex.Civ.App., 1967, no writ hist.); McKanna v. Edgar, 380 S.W.2d 889 (Austin Tex.Civ.App., 1964); and Southern Nat. Bank of Houston, Tex. v. Tri Financial Corp., 317 F.Supp. 1173 (U.S.D.C., S.D. Tex., 1970).

In the McKanna case it was said: "We have no hesitancy in holding that the execution of the note in question payable in Texas brings the appellant under the above quoted provision as 'doing business' in Texas." This case was reversed on other grounds at 388 S.W.2d 927 (Tex.Sup., 1965).

We find and hold on the basis of the authorities above cited that under and pursuant to the provisions of Art. 2031b, Aero had sufficient minimum contacts with the State of Texas that the maintenance of this suit in Texas does not offend traditional notions of fair play and substantial justice.

The judgment is reversed and the cause remanded for trial on the merits.