Harold B. DeJULIO, Individually and as General Partner of Texas Land Venture, a Partnership, Appellant,

v.

William Robert LAWLER, Jr., as Trustee of the Lawler Family Trusts, Appellee.

No. 18184.

Court of Civil Appeals of Texas, Fort Worth.

Jan. 17, 1980.

Rehearing Denied Feb. 14, 1980.

Boyd, Veigel & Gay, and Bill Boyd, McKinney, for appellant.

Ungerman, Hill, Ungerman, Angrist, Dolginoff, Teofan & Vickers, and Vernon O. Teofan, Dallas, for appellee.

## OPINION

MASSEY, Chief Justice.

From a summary judgment rendered in behalf of plaintiff William Robert Lawler, Jr., trustee of the Lawler Family Trusts, and against defendant Harold B. DeJulio in his individual capacity and as the (sole) general partner of Texas Land Venture, a limited partnership, DeJulio and Texas Land Venture have appealed.

We affirm.

At no time during the course of events giving rise to the lawsuit was the named plaintiff, William Robert Lawler, Jr., trustee, involved in the transactions giving rise to the controversy. He assumed that office for the Lawler Family Trusts, after the December 15, 1977 resignation by Mr. George Nicoladze. Up until then Nicoladze had served as trustee since November 21, 1972.

At all material times it was Nicoladze who engaged in the transactions giving rise to this suit, either as trustee or as an individual, and often by and through a Mr. Roger Lawler as his agent. Nicoladze's resignation occurred following his execution, as trustee, of a certain $950,000.00 note. This note is of material importance. It was made and delivered to DeJulio on April 5, 1977. The contractual obligation thereby expressed as that of Lawler Family Trusts, was extinguished, as cancelled by the summary judgment. On this appeal it is that cancellation the appellants seek to have reversed.

At the trial court level this case originally involved three causes of action, one of which was to cancel the $950,000.00 note. About three weeks after the date of the summary judgment, on February 8, 1979, Lawler Family Trust moved for severance of its cause of action to which summary judgment was applicable from the other two causes. On February 23, 1979 the court entered its order of severance. One result was finality of the summary judgment of cancellation.

Mr. William Robert Lawler, Sr., father of the person who brought suit as trustee, was the individual who created the Lawler Family Trusts on April 23, 1968. Beneficiaries were the three sons and three daughters of H. Roger Lawler, another of the sons of Lawler, Sr. By the trust instrument Roger Lawler was, during his lifetime or competency to act, empowered to remove trustees and appoint successor trustees. The situation by the end of the calendar year 1972 was one where the sole trustee was the George Nicoladze heretofore mentioned, appointed by Roger Lawler.

Lawler, at all material times, acted as the manager of Family Trusts. This meant that as applied to trust affairs he acted as the agent for Nicoladze while Nicoladze was the trustee. This relationship persisted at the time a limited partnership was formed under California law by Harold B. DeJulio, long-time friend and associate of Nicoladze.

Nicoladze conceived the idea of Land Venture as a limited partnership to promote subscription of shares by those to become limited partners upon payment of amounts (for units or percent of interest) subscribed. By Nicoladze's conception activities contemplated to be those of such partnership would operate to the benefit of Lawler Family Trusts and also result in substantial profit for the partnership itself. DeJulio, convinced of value therein, and with aid of Nicoladze and Roger Lawler, acted upon Nicoladze's plan. He brought Land Venture into existence. Nicoladze received a fee out of the amount subscribed by those who became partners because of his services in connection with partnership promotion. Lawler also received some money out of the amount subscribed. With the remainder so subscribed used as the consideration for a purchase of land in Texas the partnership acquired the Lawler Family Trusts property, being approximately 76 acres of land in Tarrant County, Texas. That transaction of purchase coupled with contractual agreements upon contingencies and upon apportionment as profits to Land Venture and to Lawler Family Trusts in the event of sale of the property to third persons as was contemplated. It seems that everyone entered into contractual relationship with everyone else. Provided was that the contemplated sale would be by Land Venture—through the agency of Roger Lawler—failing which, as contingent thereupon, it was to be the obligation of Lawler to purchase the land upon the minimum amount agreed for sale to third parties, and that Lawler could, instead of himself, make Lawler Family Trusts the purchaser. Agreed, in the event that it should be either Lawler or Lawler Family Trusts who would become obliged to purchase—or repurchase—was contractual provision upon the price (by note on terms specifically prescribed) which would insure a profit to Land Venture.

It was for the accomplishment of this very purpose that Land Venture was promoted and came into existence. The transaction thereafter contracted was deemed by the parties to be a joint venture and not a loan of money by the partnership to Lawler

Family Trusts. The expectancy of everyone was for a profit after prior existing liens on the property were extinguished by use of profits from the proceeds of the sale of the property as intended. There was agreement upon what was to be the percentage "split" between the two principals, Land Venture and Lawler Family Trusts. However, there was also the alternate contingency that Land Venture would profit though Lawler Family Trusts would not profit (indeed might be exposed to loss) from an obligation by its note in payment for reconveyance of the property. There was provision for such note to be executed by the trust without regard to whether it might, or not, result in a detriment or loss to Lawler Family Trusts. This provision was deemed by some to be satisfied by the $950,000.00 note set aside and cancelled by the summary judgment. On this more detail will be given in our discussion.

One method of explaining the transaction to be accomplished, for the purpose of which Land Venture was organized, is to state it from the standpoint of those who were the partners. Their plan was:

1. To acquire title to a certain tract of land in Tarrant County, Texas from the said Lawler Family Trusts subject to an existent first mortgage lien of $950,000.00 to Ryan Mortgage Investors and subject to a second mortgage lien of $50,000.00 to Macatee Capitol Corporation with consideration for such real estate to be by initial funds paid, or obligated to be paid, by the new partnership. Contemplated was that this would alleviate the condition of existent stress occasioned by the imminent threat of foreclosure by the existing lienholders.

2. To enter into agreement with Lawler Family Trusts and provide that the services of Roger Lawler (its manager under Nicoladze, trustee) be employed as the agent of Land Venture for the purpose of meeting its obligations and for the purpose of finding a purchaser for the property. To contract with Lawler Family Trusts that the land should not be sold at a price less than $1.00 per square foot. (There was anticipation that there should be a sale at the approximate price of $3,330,684.00 total,—sufficient in amount to retire the existing indebtedness owed to Ryan Mortgage and to Macatee Corporation and to return a profit to the partners.)

(Such agreement was entered into, as part of a contract which included Ryan Mortgage Investors, providing, in substance, as follows:

That in consideration of Ryan's renewal and extension of the 1st lien note, with Land Venture's return consideration the agreement that its rights (as owner and/or as holder of security interest by deed or as a mortgagee as the case might be) were subordinate to Ryan's, and also that Land Venture be bound in the same way Lawler Family Trusts were bound to Ryan, plus agreement that the venue of any lawsuits which might result therefrom would be in Tarrant County, Texas. Lawler Family Trusts' return consideration as well as that of Land Venture was contracted to be payment to Ryan of $27,417.07 cash to reimburse Ryan the 1975 taxes it had paid and to bring current the delinquent interest on Ryan's first lien note, plus agreement to pay (up to $1,000.00) the legal costs for negotiating and preparing the legal instruments incident to the new agreement, and with the additional commitment of Lawler Family Trusts and Land Venture to pay $5,000.00 cash per month on principal until January 1, 1977.)

3. To enter into further agreement with Lawler Family Trusts and with Roger Lawler in commitment, upon conditions predicate relative to the anticipated sale and conveyance of the subject property, and also relative to the apportionment and division of the proceeds of a sale in the event it was made, and, failing the eventuality of such sale, to make further provision that there be a sale and conveyance of the property to Roger Lawler or Lawler Family Trusts upon the commitment to make the purchase.

(In June of 1975 such agreement was entered into, providing, in substance as follows: that in consideration of Lawler Family Trusts initial conveyance of the property to Land Venture the latter agreed to pay $390,000.00, said amount to be paid as: payable $78,000.00 on or before June 30, 1975 and $13,000.00 monthly thereafter beginning last day of July, 1975 and continuing until the last day of June, 1977. The return consideration to Land Venture, in addition to the conveyance of the land, was Roger Lawler's agreement to act for it in the attempt to sell the land to third parties, along with provision that in the event of failure to accomplish such a sale Land Venture should be entitled to sell it to Roger Lawler—and failing his acceptance to sell it to Lawler Family Trusts—with obligation of one or the other to take the same, and to make the return consideration to Land Venture the amount of $950,032.00, by notes payable in amounts as follows, without interest, viz: $237,508.00 by January 10, 1978, $237,508.00 by July 10, 1978, $237,508.00 by January 10, 1979, and $237,508.00 by July 10, 1979, said notes to be the general obligation of Lawler, and, in the event of default, to be applicable for security to all the assets standing in the name of Lawler, and, upon the delivery of said notes Land Venture to be obliged to convey all its right, title, and interest to the property to Lawler or to Lawler Family Trust at the option of Lawler. Though no sale to third parties was ever made the contract provided that in the event such a sale was made, (provided not to be made for less than one dollar per square foot nor for a period of installment payments which would exceed a period of 48 months from date of the sale) the apportionment of the proceeds to be as follows: (1) $1,530,000.00 to first mortgage holder (Ryan) and to the Lawler Family Trusts, (2) to Land Venture all the money received by Lawler from Land Venture, (3) division of balance of sale proceeds, as follows: (a) if sold in 1975, 30% to Land Venture and 70% to be divided between Lawler and Lawler Family Trusts as they might agree; (b) if sold in 1976, 35% to Land Venture and 65% to Lawler and the trust; (c) if sold in 1977, 40% to Land Venture and 60% to Lawler and the trust. (There was further provision that should there be default in payments to be made by Land Venture nevertheless Land Venture should be entitled to participation in net profits, though reduced from the proportion of 40% to such amount as might be paid in proportion to the total payment obligation contracted at $390,000.00, the initial transaction consideration from Land Venture to Lawler Family Trusts for the deed.)

To go further into details of the involved transactions of Lawler Family Trusts with Land Venture: Land Venture, with Nicoladze, individually and/or as trustee, and with Roger Lawler, individually and also as agent for Nicoladze; trustee; and Lawler Family Trusts through Nicoladze, trustee, with H. Roger Lawler, etc., appears unnecessary to an understanding of the factual background giving rise to the suit. In the absence of ratification of the many involved transactions by beneficiaries of Lawler Family Trusts, and there was no ratification, it is obvious that there was misfeasance incident to duties of office or agency by both Nicoladze and by Lawler. Indeed, both Nicoladze and Lawler accepted part of the money raised by the promotion of Land Venture under circumstances which proved to have been injurious to the interest of the beneficiaries of Lawler Family Trusts, foreseeable at time of receipt. Of this DeJulio, individually, and as general partner of Land Venture, was aware so that neither could claim benefits of one in the position of innocent purchaser. Indeed they were "on notice" of everything done or left undone by Nicoladze and Roger Lawler at all stages and with reference to all activities. Neither Nicoladze or Roger Lawler were sued, but Land Venture and DeJulio would neverthe-

less be chargeable because of knowledge and participation with them.

The originally anticipated sale was not made. By April 4, 1977 it was obvious that if anything was to be done by Land Venture it would be to reconvey the property to Lawler Family Trusts, as theretofore contingently agreed, for the agreed consideration of $950,032.00 by note. Land Venture (DeJulio) probably thought this had been effected (though it was not, as is presently to be explained where we deal with the question of want of consideration) and Nicoladze probably thought so as well. On April 4, 1977 Nicoladze, as trustee for Lawler Family Trusts, gave what was thought to be the return consideration for reconveyance of the property in the form of a note, the $950,000.00 note cancelled by summary judgment, though the payments provided therein differed materially from the payments prescribed to be made upon the antecedent contract relative to a note in the amount of $950,032.00.

The $950,000.00 note of Nicoladze, trustee, as consideration for a deed on reconveyance of the subject property was by the petition of Lawler Family Trusts contended to have totally failed as consideration because the deed of reconveyance was not that of Land Venture but was that of DeJulio, as an individual, apart from any connection with Land Venture; and furthermore contended as not possible to be corrected by Land Venture because not timely offered to be remedied or cured, as by a correction deed, because there had been a foreclosure upon the property under authority of the earlier mortgages thereon before such tender was ever made. In other words Land Venture possessed no ability to convey any character of title at the time it stated its offer to give a deed to Lawler Family Trusts.

By special appearances at the very beginning of the suit Land Venture and DeJulio, as an individual, objected to the jurisdiction of the trial court. Their pleas in such regard were overruled. This is made the complaint by a point of error. When we view the situation as one in which

DeJulio was the sole general partner of Land Venture and by the evidence shown as bound by the Texas sited actions of Roger Lawler, Land Venture's agent, it appears obvious that under the principles of law applicable to cases of agency the court did not err in holding that it had jurisdiction. We overrule the complaint of no jurisdiction.

Texas "long arm" statute is Tex.Rev.Civ. Stat.Ann. art. 2031b, "Service of process upon foreign corporations and non-residents" (1964). It provides that a non-resident entering into a contract with a Texas resident, performable in part by either party in Texas, shall be deemed as "doing business" in Texas. In particular reference should be made to Section 4 of said Article, "Doing business in state; definition." The cases cited by Lawler Family Trusts in support of the decision of the trial court are: *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760 (Tex.1977); *Hoppenfeld v. Crook*, 498 S.W.2d 52 (Tex.Civ.App.—Austin, 1973, writ ref. n. r. e.); *National Truckers Service, Inc. v. Aero Systems, Inc.*, 480 S.W.2d 455 (Tex.Civ.App.—Fort Worth, 1972, writ ref. n. r. e.); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974).

We find ourselves totally in agreement with the reply of Lawler Family Trusts to the remainder of the contentions made. Its position is substantially stated by the second and third counterpoints wherein it makes the presentation that the absence of any genuine issue of material fact to be tried was established by undisputed and uncontroverted facts, both by the written documents and by the sworn testimony to be found in the depositions of DeJulio and Nicoladze; and that, furthermore, it was established thereby that Lawler Family Trusts received no consideration for the execution of the $950,000.00 note by Nicoladze, as trustee. Additionally, we hold that even if the contrary were true it was nevertheless established as a matter of law that in the execution and delivery of said $950,000.00 note Nicoladze did not, as trustee for Lawler Family Trusts, possess the

authority to bind the trust entity by the note. There was want of authority to do so by either the Texas Trust Act or by the instrument executed in 1968 (by William Robert Lawler, Sr.) creating Lawler Family Trusts. Because DeJulio and Land Venture were "on notice" of the want of authority of Nicoladze to act for Lawler Family Trusts to the detriment of the latter, and also "on notice" of the want of authority of Roger Lawler to act simultaneously as agent for Lawler Family Trusts and for Land Venture and/or for himself, to his profit at the expense of Lawler Family Trusts, they could not claim benefits synonymous with those of an "innocent purchaser".

■ Displayed as tainted were all the transactions by which there actually was or might have been detriment to Lawler Family Trusts, through the participation of either Nicoladze or Roger Lawler. As so tainted, Lawler Family Trusts, through its innocent successor trustee, was entitled to disaffirm as to DeJulio and Land Venture whichever of the transactions it might desire. While often there might be necessity to consider inhibitions by the equitable doctrine forbidding unjust enrichment there is not the necessity so to do in arriving at our conclusion upon the propriety of the summary judgment rendered in this case. That judgment amounted to cancellation of the $950,000.00 note as a contractual obligation of Lawler Family Trusts.

■ Equitable principles should ultimately control the disposition of the Lawler Family Trusts' suits which pend. There is nothing by these principles which would operate to prohibit the cancellation of the note as a contractual obligation. As appropriate in the disposition of issues remaining to be tried there may be recognition of the fact of such cancellation by summary judgment. What we seek to make clear is our holding that Lawler Family Trusts is not bound and is free of any obligation "by contract" to pay $950,000.00 exhibited by the note. Beyond this there is not the need to speculate and write further so as to be

thought to have rendered an advisory opinion.

Judgment is affirmed.