**AFFIRM; and Opinion Filed April 19, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00895-CV

### WINNSBORO AUTO VENTURES, LLC, Appellant
### V.
### SANTANDER CONSUMER USA, INC., Appellee

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-15149**

## MEMORANDUM OPINION

Before Justices Bridges, Myers, and Schenck
Opinion by Justice Schenck

Winnsboro Auto Ventures, LLC (Winnsboro) appeals the trial court's order denying its special appearance in a suit instituted by Santander Consumer USA, Inc. (Santander) in Dallas County. In two issues, Winnsboro argues it has insufficient contacts with Texas to support jurisdiction in this case. We conclude that Winnsboro has sufficient minimum contacts with Texas to support specific jurisdiction and the exercise of jurisdiction over Winnsboro does not offend traditional notions of fair play and substantial justice. Accordingly, we affirm the trial court's order denying Winnsboro's special appearance and remand the case to the trial court for further proceedings consistent with this opinion. Because the dispositive issues in this case are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

**BACKGROUND**

This case involves a dispute between Santander, an Illinois corporation with its principal place of business and headquarters in Dallas County, Texas, and automobile dealership Winnsboro, a Louisiana corporation with its principal place of business in Louisiana. Santander is in the business of purchasing automobile retail installment sales contracts from dealers like Winnsboro. On or about April 16, 2014, Winnsboro and Santander entered into a Non–Recourse Master Dealer Agreement (Agreement) whereby Winnsboro was entitled, but not obligated, to sell automobile retail installment sales contracts to Santander.

Under the Agreement, Winnsboro had the option of submitting a proposal, including terms and conditions, under which it would consider selling and assigning an installment sales contract to Santander. After reviewing Winnsboro's proposed terms and conditions and the applicable loan documentation, Santander could elect to purchase the installment sales contract. Winnsboro, however, controlled final approval of the sale, and could refuse the transaction notwithstanding Santander's agreement to purchase the installment sales contract. The Agreement had no specified term, and was to be governed by and construed in accordance with Texas law. Winnsboro agreed to indemnify Santander in the event of claims arising out of Winnsboro's breach of or conduct under the Agreement or the installment sales contracts.

Pursuant to the Agreement, Winnsboro solicited and sold numerous installment sales contracts to Santander. This lawsuit arises out of Winnsboro's alleged breach of the Agreement as it relates to one installment sales contract arising from a vehicle Winnsboro sold (and Santander financed) with a value of $33,165.33 (the "Contract"). Specifically, Santander alleges Winnsboro breached the Agreement by failing to repurchase the Contract after it misrepresented the condition of the vehicle and the equipment options included therewith, which resulted in the purchaser returning the vehicle and demanding a refund. Santander obtained a no-answer default judgment

against Winnsboro. Thereafter, Winnsboro filed a special appearance and moved for a new trial subject to its special appearance.

Winnsboro supported its special appearance with the affidavit of Brett Oubre, Winnsboro's president and manager, generally disavowing having done business in Texas, and detailing the nature of Winnsboro's business. Santander responded by presenting the affidavit of Benny Cherry, the Vice President–Dealer Operations for Santander (the Cherry Affidavit). The Cherry Affidavit states, in pertinent part, that Santander's corporate headquarters is in Dallas, Texas, and describes the formation of the Agreement, the parties' relationship under the Agreement, the procedures for executing the Agreement, and Winnsboro's solicitation and sale to Santander of 736 separate retail installment contracts, including the Contract. Attached to the Cherry Affidavit was a copy of the fully executed Agreement and a copy of the retail installment sales contract at issue in this case. The trial court denied Winnsboro's special appearance and ordered a new trial. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West Supp. 2016).

## STANDARD OF REVIEW

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790-91 (Tex. 2005). Consequently, we review a trial court's determination of a special appearance *de novo*. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). If, as is the case here, the trial court does not issue findings of fact and conclusions of law with its special appearance ruling, we imply all findings of fact necessary to support its ruling that are supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Lewis v. Indian Springs Land Corp.*, 175 S.W.3d 906, 913 (Tex. App.—Dallas 2005, no pet.). In this case, the trial court impliedly found the Texas long-arm statute permits the exercise of jurisdiction over Winnsboro, Winnsboro established purposeful "minimum contacts" with the forum state, and that

–3–

the exercise of jurisdiction over Winnsboro comports with "traditional notions of fair play and substantial justice."

DISCUSSION

## I.      Personal Jurisdiction

In its first issue, Winnsboro argues it is not subject to personal jurisdiction in Texas. Texas courts may exercise personal jurisdiction over a nonresident defendant "when the state's long-arm statute authorizes such jurisdiction and its exercise comports with due process." *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 70 (Tex. 2016). The Texas long-arm statute allows jurisdiction over a nonresident that does business in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2015). Among other acts, the Texas long-arm statute provides that contracting with a "Texas resident," where either party is to perform the contract in whole or in part in Texas, constitutes "doing business" in this state. *Id.* (emphasis added); *Moki Mac*, 221 S.W.3d at 574.

Winnsboro urges that because Santander is an Illinois Corporation it is not a Texas resident entitled to utilize the long-arm statute to sue Winnsboro in Texas. While the long-arm statute gives examples of actions that constitute doing business in the state, including contracting with a "Texas resident" under stated circumstances, the statute does not define the term "Texas resident." Winnsboro does not cite any language in the statute or case law holding a corporation based in Texas but incorporated under another state's laws, such as Santander, cannot be a resident of Texas. Rather, Winnsboro seizes on the long-arm statute's definition of "nonresident," for purposes of describing defendant's within its reach, as including a foreign corporation, which it would then apply to the statute's reference to the act of contracting with a Texas resident. It also points us to the Texas Business Organizations Code and its definition of "foreign entity" as "an organization formed under, and the internal affairs of which are governed by, the laws of a

–4–

jurisdiction other than this state." Borrowing from that definition, Winnsboro urges that Santander is not a "Texas resident" and, thus, cannot rely on the long-arm statute to establish jurisdiction in this case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041(2); TEX. BUS. ORGS. CODE ANN. § 1.002(28) (West Supp. 2017). We disagree with Winnsboro.

The long-arm statute's definition of "nonresident" is addressed to the power of Texas courts to effect service of process, not who may sue. Its reference to nonresident defendants within its reach is a truistic necessity to reflect the reality that long-arm service is not needed to obtain service over a defendant who is physically present in the state. *Burnham v. Superior Court*, 495 U.S. 604, 619 (1990). In defining the term "doing business" in Texas to include a nonresident corporation, the statute permits jurisdiction over corporate defendants who are neither incorporated nor based in this state, as one would expect. It is silent as to who may file suit and invoke the court's long-arm power. No language in the statute, and no logical rationale, would support the conclusion that the legislature meant to exclude corporations maintaining their principal place of business here, despite being incorporated under a different law, from invoking the court's long-arm power.[1] The Texas legislature was presumably aware of the treatment of corporate residents and citizens in the federal laws when it enacted the long-arm statute and intended that the term "resident" include corporations based or incorporated here and that they be within its reach.[2]

For the foregoing reasons, Winnsboro's attempt to utilize the long-arm's definition of "nonresident" to limit who is a "Texas resident" for purposes of invoking—rather than resisting—the court's power, is unavailing and would have the practical effect of precluding all businesses

---

[1]Winnsboro's interpretation of the long-arm statute would preclude third-party practice and the efficiencies afforded thereby in many cases. For example, under Winnsboro's construction a dispute among three corporations that are parties to a single transaction that are located in Texas but are incorporated in states outside of Texas would have to resolve their dispute elsewhere and possibly in several cases. Winnsboro's "Texas resident" argument misses the mark and the focus of a court's jurisdictional inquiry.

[2] When construing a statute, courts presume that the legislature was aware of the background law and acted with reference to it. *Jasek v. Texas Dept. of Family and Protective Serv.*, 348 S.W.3d 523, 528 (Tex. 2011).

who are located in this state, but incorporated elsewhere, from having access to Texas courts, and would obviate access to relief otherwise afforded to individuals giving rise to a host of avoidable constitutional concerns.[3] *HL Farm Corp. v. Self*, 877 S.W.2d 288, 290 n.4 (Tex. 1994) (corporation is an individual entitled to constitutional protection). In addition, the definitions in section 1.002 of the business organizations code, including the definition of "foreign entity" upon which Winnsboro relies, are expressly limited in their application to that code, and, thus, do not inform our analysis here. TEX. BUS. ORGS. CODE ANN. § 1.002. Applying the proper standard, we conclude jurisdiction is invoked in this case under the long-arm statute because the parties' Agreement is to be performed, at least in part, in Texas by Winnsboro submitting sales proposals and documentation to Santander and Santander reviewing same in Texas. Having determined a basis for jurisdiction over Winnsboro exists, we now consider whether the exercise of jurisdiction over Winnsboro is consistent with federal and state constitutional guarantees of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990).

### A. Due-Process Guarantees

Constitutional due-process guarantees are satisfied when (1) the nonresident defendant has established "minimum contacts" with the forum state, and (2) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (emphasis added). Minimum contacts are established when a defendant "purposefully avails" itself of the privilege of conducting activity in the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985) (emphasis added). There are three aspects of purposeful availment applicable to the minimum contacts analysis. First, it is only the defendant's contacts with the forum that

---

[3] Depriving only corporations of the right to make full use of our courts would be problematic on multiple state and federal constitutional grounds. *See Jones v. United States*, 526 U.S. 227, 239 (1999) (quoting *United States ex rel. Att'y Gen. v. Del. Hudson Co.*, 213 U.S. 366, 408 (1909)) (constitutional avoidance); *Nat'l Truckers Serv., Inc. v. Aero Sys., Inc.*, 480 S.W.2d 455, 458 (Tex. Civ. App.—Fort Worth 1972, writ ref'd n.r.e.).

count.  *Id*. at 475.  Second, the acts relied on must be "purposeful" rather than fortuitous.  *Id.* Third, a defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction.  *Id.*

First, in determining whether Winnsboro purposefully availed itself of the privilege of conducting business in the state of Texas, we consider only Winnsboro's contacts with the state. *Michiana*, 168 S.W.3d at 785.  The evidence shows Winnsboro repeatedly solicited Santander to purchase automobile retail installment sales contracts, including the Contract at issue in this lawsuit, in Texas over a period of years, and that the individual transactions were primarily in Winnsboro's control because it established the terms and conditions of sale, and retained the right of final approval.  Indeed, by its terms, the Agreement requires that the sale of each installment sales contract begins and ends with Winnsboro.  As required, for each individual contract, Winnsboro forwarded its proposed terms and conditions and all contractually required information, including customer credit-related information, to Santander's offices in Texas.  Thus, the transactions under the Agreement were not the result of Santander's unilateral acts.

Second, we consider whether Winnsboro's contacts with Texas were purposeful rather than fortuitous.  Winnsboro relies on the supreme court's decision in *Searcy* to argue its contacts with Texas were not purposeful, but were merely fortuitous.  *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58 (Tex. 2016).  Winnsboro's reliance on *Searcy* is misplaced.  In that case, a Bermudian company, located in Houston, Texas, as the sole shareholder of another Bermudian company that owned Columbian oil and gas operations, initially entered into a share purchase agreement with a Texas entity.  That deal fell apart, and the Bermudian company solicited other purchasers.  A Canadian company pursued the shares and the Texas entity sued both the Bermudian company and the Canadian company for tortious interference with the contract it entered into with the Bermudian company.  In that case, the supreme court concluded Texas courts lacked specific jurisdiction over

the Canadian company, but could validly exercise jurisdiction over the Bermudian company. In doing so, the court noted the Canadian Company's communications with the Bermudian company's representatives, who were located in Texas, was fortuitous, rather than purposeful. In reaching this conclusion, the court recognized the Canadian company did not specifically seek out a Texas seller or Texas assets, let alone attempt to meddle with a contract governed by Texas law or develop a Texas business. *Id.* at 73. It was, instead, on the hunt for Colombian assets, and the Bermudian company happened to own some. Here, Santander's business and assets were located in Texas and Winnsboro contracted to obtain the benefits of same and Texas law. Thus, *Searcy* is distinguishable from this case and does not guide us in determining whether Winnsboro's contacts with Texas were purposeful.

The supreme court has stated that the contacts of "[s]ellers who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' " are purposeful rather than fortuitous. *Michiana*, 168 S.W.3d at 785 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Winnsboro voluntarily entered into the Agreement with Santander whereby it created a continuing relationship and obligations with a resident of Texas. Pursuant to that Agreement, Winnsboro had the option to solicit Santander for the purpose of selling its retail installment agreements. Under these circumstances, we conclude Winnsboro's contacts with the state were purposeful rather than fortuitous. *See DJRD, LLC v. SKOPOS Financial, LLC*, No. 05-16-00072-CV, 2016 WL 3912769, at *3 (Tex. App.—Dallas, July 14, 2016, no pet.) (mem. op.); *Colmen LLC v. Santander Consumer USA, Inc.*, No. 05-17-00101-CV, 2017 WL 5022700, at *8 (Tex. App.—Dallas Nov. 3, 2017, no pet.) (mem. op.).

Finally, we consider whether Winnsboro sought and obtained some benefit or profit from conducting business with a Texas resident. The stream of commerce Winnsboro tapped into was significant. As noted, Winnsboro sold and assigned 736 retail installment sales contracts valued

–8–

in excess of $19 million to Santander. In addition, pursuant to the parties' Agreement, the relationship was to be governed by Texas law. By entering into an open-ended Agreement that expressly provides that Texas law governs its relationship with Santander, had Santander reneged on any of its agreements to pay Winnsboro for an installment contract, Winnsboro had the contractually assured right to invoke Texas law and a Texas remedy. For the foregoing reasons, we conclude that Winnsboro sought and obtained benefits from doing business in Texas.

We conclude Winnsboro has sufficient purposeful contact with Texas to satisfy the first prong of jurisdictional due process.

### B. Specific or General Jurisdiction

In order to exercise jurisdiction over a non-resident defendant, its contacts with a forum must give rise to either specific or general jurisdiction. *Retamco Operating v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). On appeal, the parties restrict their arguments to the existence of specific jurisdiction. When specific jurisdiction is alleged, we focus the minimum-contacts analysis on the "relationship among the defendant, the forum[,] and the litigation." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984)). In order for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *See Moki Mac*, 221 S.W.3d at 585 (citing *Guardian Royal*, 815 S.W.2d at 229–33. We find this Court's decisions in *SKOPOS* and *Colmen* to be instructive in this case. *See SKOPOS*, 2016 WL 3912769; *Colmen*, 2017 WL 5022700.

The *SKOPOS* case involved an agreement between DJRD, d/b/a Darcars, and SKOPOS Financial, whereby Darcars solicited SKOPOS's purchase of retail installment sales contracts. The agreement specifically provided that, if Darcars failed to collect the down payment in full prior to

SKOPOS's purchase of the contract, the contract would be subject to immediate repurchase. SKOPOS alleged Darcars failed to collect the down payment from the purchaser of a 2014 Toyota Camry and refused to repurchase the contract. By its lawsuit, SKOPOS sought to recover the damages it suffered due to Darcars's alleged failure to repurchase the installment sales contract as promised. We concluded in *SKOPOS*, that there was a connection between SKOPOS's breach of contract claim and Darcars's contacts with Texas. *SKOPOS*, 2016 WL 3912769, at \*4.

The *Colmen* case involved an agreement between Colman and Santander, whereby Colman solicited Santander's purchase of retail installment sales contracts. Pursuant to the agreement, Colmen represented and warranted that, for each contract sold and assigned to Santander, the customer identity, employment, income and other credit information provided to Santander is true and accurate. Santander maintained that Colmen breached the agreement by misrepresenting retail customers' income, employment, and credit or identifying information relating to installment sales contracts it sold to Santander, thereby obligating Colmen to repurchase those contracts. We concluded in *Colmen*, that there was a substantial connection between Santander's breach of contract claim and Colmen's contacts with Texas. *Colmen*, 2017 WL 5022700, at \*9.

Here, Winnsboro solicited Santander's purchase of the Contract. Pursuant to the Agreement, Winnsboro represented that there were no defenses available to the purchaser that would impair the validity, enforceability, collectability, value, or marketability of the Contract and that the vehicle and all of the options thereto were accurately described in the Contract. Santander alleges Winnsboro misrepresented the condition of the vehicle that is the subject of the Contract by failing to disclose significant structural damage and by representing the vehicle had equipment options it did not contain. Santander contends that due to the breach of Winnsboro's warranties as described above, Winnsboro is required by the terms of the Agreement to repurchase the

Contract and/or to pay Santander the current payoff amount of the Contract, and refuses to do so. By its lawsuit, Santander seeks to recover the damages it suffered due to Winnsboro's alleged breach of the Agreement. Under these circumstances, we conclude there is a connection between Santander's breach of contract claim and Winnsboro's contacts with Texas.

Winnsboro's contacts with Texas support the exercise of specific personal jurisdiction. Accordingly, we overrule Winnsboro's first issue.

*C. Fair Play and Substantial Justice*

In its second issue, Winnsboro argues the exercise of personal jurisdiction over it would offend traditional notions of fair play and substantial justice. Fair play and substantial justice should be considered in relation to (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. "When a nonresident defendant has purposefully established minimum contacts with the forum state, it will be only a rare case when the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice." *Lombardo v. Bhattacharyya*, 437 S.W.3d 658, 675 (Tex. App.—Dallas 2014, pet. denied). In a special appearance, a defendant bears the burden of presenting "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Despite this burden, Winnsboro presented insufficient evidence to support a finding that the exercise of jurisdiction over it would offend traditional notions of fair play and substantial justice. Winnsboro urges (1) the burden on Winnsboro to defend this case in Texas is substantially high because all of the evidence, including witnesses, are located in Louisiana, (2) Texas's interest in the dispute is relatively low based on Winnsboro's contention that Santander is not a Texas

resident, and (3) the interstate judicial system's interest in obtaining the most efficient resolution of controversies would best be served in Louisiana because Santander, if successful, will have to domesticate a judgment there.

### 1. Undue burden on nonresident defendant

Winnsboro argues it is unduly burdensome for it to defend this suit in Texas because all of the potential witnesses related to the case are located in Louisiana, including the company that sold the vehicle at issue to Winnsboro. While subjecting Winnsboro to suit in Texas certainly imposes a burden on it, the same can be said of all litigants, resident and nonresident alike. Indeed, it is inevitable that someone will have to travel to resolve contract disputes between citizens of different states whenever they contract. *See MedCost L.L.C. v. Loiseau*, 166 S.W.3d 421, 442 (Tex. App.—Austin 2005, no pet.) (Patterson, J., dissenting) ("Travel required by a corporate defendant and its employee witnesses to the forum does not constitute a substantial burden or undue hardship as to violate the Due Process Clause if the defendant has purposefully availed itself of that forum."). Therefore, we conclude the trial court did not err in impliedly finding this consideration weighs in favor of jurisdiction in this case.

### 2. Interests of the forum state in adjudicating the dispute

The dispute in this case concerns Winnsboro's sale of the Contract to Santander and the Agreement between the parties. Because, contrary to Winnsboro's assertion, this dispute involves a Texas resident, Texas courts have a substantial interest in adjudicating the claims. *Lewis v. Indian Springs Land Corp.*, 175 S.W.3d 906, 919 (Tex. App.—Dallas 2005, no pet.). Moreover, Texas has a manifest interest in ensuring "a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473. Furthermore, Texas has an interest in adjudicating the dispute because the laws of Texas will apply to the contract's interpretation. *Billingsley Parts & Equip., Inc. v. Vose*, 881 S.W.2d 165, 170 (Tex. App.—Houston [1st Dist.]

–12–

1994, writ denied). Therefore, we conclude the trial court did not err in impliedly finding this consideration weighs in favor of jurisdiction in this case.

### 3. *Plaintiff's interest in obtaining convenient and effective relief*

As a Texas resident, Santander's interest in obtaining convenient and effective relief weigh in favor of the exercise of jurisdiction. *Royal American Const. Co. v. Comerica Bank*, 164 S.W.3d 466, 470 (Tex. App.—Dallas 2005, no pet.). As to Winnsboro's assertion that Santander will have to domesticate a judgment in Louisiana to collect thereon, Winnsboro has presented no evidence establishing it has no assets in Texas, and domesticating a judgment is generally not a complicated process. Moreover, the convenience of obtaining a judgment in Texas in this case outweighs any concern over enforcement in another state. Therefore, we conclude the trial court did not err in impliedly finding this consideration weighs in favor of jurisdiction in this case.

### 4. *The interstate judicial system's interest in obtaining the most efficient resolution of controversies*

In order to overcome the interstate interest in litigating in Texas, Winnsboro must make a compelling case as to why jurisdiction would be unreasonable. *Id.* at 477. Santander will have witnesses located in Texas and Winnsboro will have witnesses in Louisiana. Winnsboro's claim that it has witnesses in Louisiana is not compelling enough to create the possibility of more efficient resolution. The inconvenience to the parties and to the non-party witnesses is minimal because the parties can depose the non-party witnesses and those witnesses cannot be compelled to appear for deposition more than 150 miles from the county in which they reside. TEX. R. CIV. P. 176.3. Moreover, because the parties chose Texas law to govern their agreement, other states, including Louisiana, would be burdened with the obligation to learn and apply Texas law to resolve this case. Therefore, we conclude the trial court did not err in impliedly finding this consideration weighs in favor of jurisdiction.

For the reasons stated above, Winnsboro has failed to present a compelling case as to why

jurisdiction in Texas does not comport with traditional notions of fair play and substantial justice. We overrule Winnsboro's second issue.

## CONCLUSION

Because the long-arm statute confers jurisdiction over Winnsboro, because Winnsboro's contacts with Texas were direct and purposeful, because Santander's claim arises out of Winnsboro's contacts with Texas, and because jurisdiction over Winnsboro comports with traditional notions of fair play and substantial justice, the trial court may exercise specific jurisdiction over Winnsboro. Accordingly, we affirm the trial court's order denying Winnsboro's special appearance and remand this case to the trial court for further proceeding consistent with this opinion.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

170895F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WINNSBORO AUTO VENTURES, LLC,
Appellant

No. 05-17-00895-CV      V.

SANTANDER CONSUMER USA, INC.,
Appellee

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-16-15149.
Opinion delivered by Justice Schenck.
Justices Bridges and Myers participating.

In accordance with this Court's opinion of this date, the trial court's order denying
WINNSBORO AUTO VENTURES, LLC'S special appearance is **AFFIRMED**.

It is **ORDERED** that appellee SANTANDER CONSUMER USA, INC. recover its costs
of this appeal from appellant WINNSBORO AUTO VENTURES, LLC.

Judgment entered this 19th day of April, 2018.